(No. 6876.    May 2, 1941.)

UNION CENTRAL LIFE INSURANCE COMPANY, a corporation, Respondent, v. WILSE A. NIELSON, Appellant.

[114 Pac. (2d) 252.]

REHEARING DENIED JUNE 25, 1941
(Ailshie, J., did not participate)

484

Robert M. Kerr, Jr., for Appellant.

Merrill & Merrill, for Respondent.

HOLDEN, J.—December 12, 1919, Louis T. Miller and Marina Miller, husband and wife, executed and delivered to respondent their promissory note for the sum of $8,000 with interest at the rate of 8% per annum, due December 1, 1930. To secure the payment of the note the Millers executed to respondent a real estate mortgage upon land owned by them, together with and including certain water and ditch rights appurtenant thereto, located in Butte County, Idaho. The mortgagors covenanted and agreed:

"to pay all taxes and assessments upon said premises or this mortgage or the debt secured hereby, (such latter taxes, however, and the interest charged on the debt secured hereby, not to exceed the maximum rate allowed by law) laid or assessed in Idaho, also personal taxes; also all dues, rents or assessments which have been or hereafter may be made upon ditch or water rights or water stock in irrigation or water or reservoir companies referred to herein, whether same be assigned to the mortgage as collateral security or transferred to it absolutely, and to deliver to said mortgagee, the receipts of the proper officers for the payment thereof, and upon failure so to do the mortgagee herein may, at its option, pay

same, and the receipts taken shall be conclusive evidence of the validity of the claims and the payment thereof; to keep the buildings located upon said premises insured for the insurable value, in some Company to be approved by the said mortgagee, delivering all policies and renewal receipts to said mortgagee, with loss, if any, payable to said mortgagee or assigns, and failure or refusal so to do shall authorize the mortgagee, at its option, to have the buildings so insured; . . .

"that all money paid by said mortgagee for insurance, taxes, or water, reservoir or ditch dues, rents or assessments, or any sum paid in protection of the lien of this mortgage, as herein provided, shall bear interest from the date of such payment, at the rate of ten per cent per annum, and, together with costs and attorney's fees shall be secured hereby and be immediately payable, or on demand, at the mortgagee's option."

The mortgage was recorded in the office of the recorder of Butte County, Idaho, January 2, 1920. November 30, 1926, the above named mortgagors conveyed the mortgaged property by Warranty Deed to E. A. Miller, the deed being thereafter recorded. Following the conveyance to E. A. Miller and on August 13, 1929, a payment of $1600 was made on the mortgage, reducing the balance to $2384.39. April 19, 1930, E. A. Miller and Florence Miller, his wife, conveyed the property by Warranty Deed to appellant Wilse A. Nielson. This deed was also recorded.

December 1, 1930, appellant executed, acknowledged and delivered to respondent the following instrument:

"I (we) request and accept the extension of the time of the payment of the debt evidenced by the above described note secured by the instrument hereinabove described, for $8,000 from December 1st, 1930, to December 1st, 1935, with interest, said note having been reduced to $2384.39 by partial payments at the rate of eight per centum per annum, represented by five interest notes each in the amount of $190.75, signed by Wilse A. Nielson.

"The notes and the instrument securing the debt to remain otherwise unimpaired and in full force, and I (we) acknowledge the validity of the entire indebtedness

in said instrument described and promise to pay the same.

Dated     December 1st, 1930

[Signed]     Wilse A. Nielson."

February 11, 1931, respondent caused the extension agreement to be recorded in the office of the county recorder of Butte County. On the same day appellant executed the extension agreement he also executed and delivered to respondent five interest notes, each in the amount of $190.75, dated December 1, 1930, and falling due December 1, 1931, 1932, 1933, 1934 and 1935, respectively. He paid the first interest note as well as the sum of $70.99 on the interest note due December 1, 1932, but failed to pay the balance of the note falling due December 1, 1932, and also defaulted in the payment of the interest notes maturing December 1, 1933, 1934 and 1935, respectively.

By reason of appellant's failure to pay certain taxes and water assessments, as required by the terms of the mortgage, respondent paid such taxes and water assessments to protect its mortgage. April 4, 1939, it filed a complaint in foreclosure in the District Court for Butte County, against appellant and others, but did not make the mortgagors party defendants nor did it seek or take a deficiency judgment against appellant. Thereafter, both specially and generally, appellant demurred to the complaint. July 6, 1939, the demurrers were overruled. August 15, 1939, appellant answered, pleading certain defenses, and May 7, 1940, filed an amended answer pleading additional defenses, hereinafter discussed. The suit was tried upon the complaint and original and amended answers, commencing May 7, 1940. July 18, 1940, findings of fact and conclusions of law were made and filed and on the same day a decree of foreclosure was rendered and entered thereon in favor of respondent and against appellant, from which this appeal was prosecuted.

Appellant specifies 30 alleged errors which may be grouped as follows: (1) Specifications 1-5-7-12-14-26-27 and 30 challenge the validity of the extension agreement; (2) specifications 3-4-5-11-24-25 and 30 present the ques-

tion as to whether plaintiff's cause of action was barred by the statute of limitations; (3) specifications 2-8-9 and 30 raise the question as to whether the interest notes signed by appellant, and the taxes and water assessments against the real estate paid by respondent, were liens against the mortgaged property; (4) by specification 6 it is complained the court erred in requiring appellant to file a bill of particulars; (5) by specifications 10-11 and 12 it is insisted the court erred in admitting and rejecting certain evidence, hereinafter discussed; and (6) by specifications 13-14-15-16-17-18-19-20-21-22-23-24-25-26-27-28-29 and 30 appellant complains the findings of fact and conclusions of law are not sufficient to support the decree. The specifications of alleged error will be discussed in that order.

The principal grounds upon which the validity of the extension agreement (in the first group) is attacked are: (a) it is not executed by respondent as required by the statute of frauds (Sec. 16-505, I. C. A.); (b) that no consideration was given for the execution of the agreement; and (c) that the extension agreement lacks mutuality.

The above-quoted instrument was signed and acknowledged by appellant December 1, 1930, at the office of Miller and Viele, finance correspondents of respondent, at Salt Lake City, Utah. Miller and Viele then, in accordance with its practice in such matters, forwarded the instrument to respondent at its general offices located at Cincinnati, Ohio, for its acceptance or rejection. Thereafter, respondent, in a letter of acceptance, returned the instrument to Miller and Viele, asking them to place it of record. Miller and Viele then notified appellant of such acceptance and caused the instrument to be recorded in the office of the county recorder of Butte County, Idaho, February 11, 1931. The acceptance by respondent and causing the instrument to be recorded was sufficient to irrevocably bind it. It was not necessary that respondent accept the instrument the instant it was signed and acknowledged by appellant, nor is there any evidence in the record showing that appellant, at the time he signed the instrument, either expected or demanded instant acceptance. Indeed, there is nothing in the record showing

Miller and Viele were authorized to do anything more than receive the instrument from appellant, after it was signed and acknowledged, for the purpose of forwarding it for acceptance, as the practice in such matters required. Appellant was not bound until the instrument was accepted by respondent; consequently he could not have been prejudiced by reason of the fact the instrument was forwarded to Cincinnati for approval, and it does not appear there was unreasonable delay in the matter of acceptance. Furthermore, both parties treated the instrument as a consummated extension agreement, appellant making and respondent receiving payments under its terms.

But it is contended no consideration was given by respondent for the extension agreement. The answer to that contention is: That "forbearance to sue or assert a legal right constitutes sufficient legal consideration" (*McHugh v. Rosaia*, (Wash.) 51 Pac. (2d) 616, 617), which disposes of the first group of assignments.

The second group presents the question as to whether respondent's cause of action was barred by the statute of limitations. The extension agreement had the effect of extending the time of payment of the balance of the mortgage debt for a period of five years—from December 1, 1930, to December 1, 1935. Furthermore, the court found, and it is not disputed, that appellant paid $100.00 October 17, 1935, as well as the further sum of $100.00 November 30, 1935. This suit was commenced April 24, 1939. It was, therefore, not barred by the statute (Sec. 5-216, I. C. A.).

It is insisted however, respondent, under its option, declared the principal debt due more than five years before the suit was commenced. We have carefully examined the testimony of appellant as well as the testimony of his witness, D. A. Skeen. Neither witness· testified respondent at any time declared the principal obligation due. As contended by respondent: "The most that can be gleaned from any of their testimony is that the Company [respondent] requested payment on the interest notes as they fell due, and that at their request the Company furnished them a statement of the amount

owing to the Company, so that they could get a loan from the Federal Land Bank to refinance the mortgage."

The third group of assignments presents the question as to whether the taxes and water assessments paid by respondent were liens against the mortgaged property, and whether a recovery of the sums paid is barred by the statute of limitations. Section 44-801, I. C. A., provides:

"Mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession."

In the case at bar the mortgagors contracted to pay the taxes and water assessments; they also contracted that if they failed· to pay such taxes and water assessments respondent might, "at its option, pay same, and the receipts taken shall be conclusive evidence of the validity of the claims and the payment thereof"; and it was further contracted "that all money paid by said mortgagee [respondent] for insurance, taxes, or water, reservoir or ditch dues, rents or assessments, or any sum paid in protection of the lien of this mortgage, as herein provided, ... shall be secured hereby. . . . "

Here the mortgaged property was "hypothecated for the performance of an act," to-wit, the payment of taxes and water assessments, in the manner provided by statute, and moreover, it was further expressly agreed that any money paid by the mortgagee for taxes and water assessments "shall be secured hereby." Thereby and by reason thereof, the sums paid clearly became a part of the mortgage debt, just as fully secured as the principal sum itself, hence would not become due until the principal sum fell due. It follows then that the sums paid for taxes and water assessments were liens against the real estate, and having become a part of the mortgage debt, the extension of the time of payment of the mortgage debt operated to extend the time of payment of the sums paid for taxes and water assessments.

By the sixth assignment of error appellant complains the court erred in requiring him to file a bill of particulars. The record discloses appellant, by way of a second affirmative defense, pleaded that prior to the first day of December, 1932, respondent exercised its option to "de-

clare all of the indebtedness which this defendant had agreed to pay the plaintiff, to be due and payable," and therefore, that the action was barred by the provisions of Section 5-216, *supra*. Respondent filed a special demurrer to such defense, pointing out it could not be determined "whether it will be contended that the said declaration was oral or in writing, and if in writing, what the terms" were, nor "by whom made if the same was oral." The trial court overruled the demurrer. Respondent then filed a demand for a bill of particulars, requesting that defendant clarify the allegations of his second affirmative defense by "more particularly stating the following: The date upon which he will contend plaintiff declared indebtedness due and payable, whether said declaration was written or oral, and if written, supply the plaintiff herein with a copy thereof, and if oral, state the substance thereof, the name of the particular person whom said defendant will contend signed the declaration, or if oral, who made said statement or declaration."

Where a litigant has many officers and agents, and where it is pleaded, as in the case at bar, that "it exercised the right and option to declare all of the indebtedness which this defendant had agreed to pay to the plaintiff to be due and payable, and did then declare, at said time [some time prior to December 1, 1932], all of said indebtedness of this defendant to the plaintiff to be then due and payable," it was very necessary plaintiff know in advance of the trial just what particular officer or agent, it would be claimed, made the alleged declaration in order to prevent surprise; otherwise respondent could not know which officer or agent it would be necessary to have present at the trial, and it could not reasonably be expected to have them all present. This court held in *Nelson Bennett Co. v. Twin Falls Land and Water Co.*, 14 Ida. 5, 6, 93 Pac. 789, that:

"Section 4209, Rev. Stat. [now Section 5-803, I. C. A.], provides the method for an adverse party securing an itemized statement of an account, *and in addition to that provision of the statute, the court in an equity case has the inherent power to so regulate and control its proceed-*

*ings as to require the party to furnish a bill of particulars in a proper case.*" (Italics ours.)

Under the circumstances hereinbefore stated we think this was a proper case for a bill of particulars.

By the tenth specification it is insisted "the court erred in permitting the plaintiff's witness, Oak Burris, to testify, over the objection of the defendant, to the contents of a letter from the plaintiff, and in denying defendant's motion to strike the reference to the contents of said letter, for the reason that the letter itself was the best evidence of its contents and was not produced nor accounted for." The record shows appellant is mistaken in his statement to the effect that the court permitted Burris to testify to the contents of a letter. The witness simply testified "the company issued a formal approval letter to Miller and Viele," but did not testify to its contents. Furthermore, appellant, upon cross examination of this witness, brought out the identical information testified to by the witness on direct examination.

By the eleventh specification of error it is complained the court erred in refusing to permit appellant to testify as to whether or not agents of respondent had made demands for the payment of the indebtedness upon which this suit is brought. The record shows appellant was asked:

"Q. Now, Mr. Nielson, has the Union Central Life Insurance Company, the plaintiff here and its agents ever called on you and demanded a payment of their indebtedness, which they are suing on here?

MR. MERRILL: Object to unless the names of the agents are given, and it is leading.

THE COURT: Objection sustained.

MR. KERR: On which ground, Your Honor.

THE COURT: One ground is that you refer to no particular agent. You furnished a Bill of Particulars here, which of course is not in fact a Bill of Particulars. That is one ground that you do not designate the name of the agent.

MR. KERR, resuming: At different times, Mr. Nielson have agents of the Union Central Life Insurance Company made demands for payment of money?

MR. MERRILL: Object on the grounds it is incompetent, irrelevant, and immaterial, and calls for a conclusion of the witness, whether or not someone is an agent of a company would have to be proven before he could answer that question.

THE COURT: Objection sustained."

We think the questions objected to called for a conclusion of the witness and not for a statement of the facts; therefore, no error was committed in sustaining the objections.

The twelfth specification of error is that the court erred in denying appellant's motion to strike from the record plaintiff's Exhibits A, B, C and D "for the reason that the same are irrelevant and immaterial." Plaintiff's Exhibit A is the original mortgage note, signed by Louis T. Miller and wife. Exhibit B is the mortgage executed by Miller and his wife to respondent to secure the payment of the note. Exhibit C is the extension agreement signed and acknowledged by appellant, and Exhibit D included the four interest notes attached together signed by appellant. These exhibits were, therefore, properly admitted.

Assignments of error 13 to 30 inclusive attack the sufficiency of the findings to support the decree. Appellant says the "defects fall generally into three classes: (a) certain of the findings of fact as specified are in effect conclusions of law and must be disregarded; (b) other findings are not supported by evidence in the case; (c) there are neither findings nor conclusions on certain material issues raised by the pleadings and evidence in the case."

Appellant excerpts numerous phrases from the findings of fact and insists they are conclusions of law. To illustrate: Appellant excerpted, among others, the phrases "there was due" and "there is now due," and contends they are conclusions of law and not findings of fact. Suppose, for instance, evidence discloses A is indebted to B on certain obligations as well as for payment of taxes and water assessments, in the total sum of $10,000. While, of course, other language might be employed, a finding "there is now due" that (the sum of

$10,000), or any other final, total sum, is necessarily the finding of an ultimate fact.

And as to the remaining objections, the record discloses the trial court found upon each and every material issue formed by the pleadings and that the evidence amply supports the findings.

Finally, we direct attention to these facts and circumstances: That appellant requested an "extension of the time of payment of the debt evidenced by the above described note [for $8,000] secured by the instrument hereinabove described" (the mortgage in question), on the day the mortgage fell due, to-wit, December 1, 1930; that it appears from the requested extension that before it was signed a computation had been made which showed a balance due in the sum of $2384.39; that appellant promised, if an extension was granted pursuant to his request, to pay that balance together with interest "at the rate of eight per centum per annum, represented by five interest notes each in the amount of $190.75," falling due December 1, 1931, 1932, 1933, 1934 and 1935, respectively; that "the notes and the instrument securing the debt" were "to remain otherwise unimpaired and in full force," and that "I [appellant] acknowledge the validity of the entire indebtedness in said instrument described and promise to pay the same."

It appears from the record respondent does not seek and did not take a deficiency judgment against appellant; that respondent paid all the taxes levied against the mortgaged real estate and that it also paid all water assessments; that appellant has occupied, used and enjoyed the mortgaged property for a period of approximately nine years; that he now seeks in various ways to defeat a recovery upon the identical mortgage, the validity of which he acknowledged for the purpose of obtaining an extension, and but for which, respondent would, of course, have proceeded to foreclose. In these circumstances, it would be contrary to good conscience and most inequitable to permit appellant to defeat a recovery—"he who comes into equity must come with clean hands."

Judgment affirmed with costs to respondent.

Givens, Morgan and Ailshie, JJ., concur.

Budge, C. J., sat at the hearing but did not participate in the decision.