391 P.2d 344

**Fred W. FISH, Plaintiff-Respondent,**

v.

**Jim FLEISHMAN, dba Fleishman Lumber Co., Defendant-Appellant.**

**No. 9341.**

Supreme Court of Idaho.

April 8, 1964.

Robert F. McLaughlin, Mountain Home, for appellant.

Vernon Daniel, Payette, for respondent.

SMITH, Justice.

Appellant (defendant) has appealed from a judgment rendered in favor of respondent (plaintiff) for wages, attorney's fees and sums expended by him for appellant's benefit, and costs.

Respondent brought this action for recovery of sums allegedly owing to him as wages and for sums expended by him for appellant's benefit under an alleged oral contract, entered into between him and appellant, for the construction and operation by respondent of a "scrag" lumber mill for appellant near Mountain Home, Idaho. Respondent also sought recovery of attorney's fees based upon his written demand for payment of his alleged wages, and appellant's refusal to pay the same. I.C. § 45–605. Appellant by his answer denied any indebtedness to respondent, and by cross-claim sought damages founded upon alleged breach of the contract by respondent. The trial court, after trial without a jury, and

upon entry of findings of fact and conclusions of law, entered judgment in favor of respondent for $6,903.22 in unpaid salary, $800.00 attorney's fees and $1,281.16 paid by respondent for appellant's benefit, together with costs.

Appellant by certain of his assignments of error questions the sufficiency of the evidence to support the trial court's findings, conclusions and judgment. Those assignments require a review of the evidence for the purpose of determining whether the trial court correctly resolved the issues.

Appellant is engaged in the wholesale lumber business with principal offices in Portland, Oregon. During 1959, he began looking for an experienced millwright to supervise the construction of a "scrag" lumber mill near Mountain Home to process timber which he had purchased. The negotiations of respondent and appellant on several occasions, concerning construction of such a mill, culminated in an oral agreement between them entered into on or about November 8, 1959. Under the agreement, respondent was to have complete charge of the construction of the mill, make all purchases necessary for its construction, pay the bills therefor subject to reimbursement by appellant or forward the bills to appellant for payment, and operate the mill when constructed. Respondent also was to negotiate for the land, electrical power and water supply necessary for construction and operation of the mill.

At the time of contracting, the parties estimated that the cost of the mill would approximate $30,000 and that its construction would require about 90 days. As compensation for his services, respondent was to receive $1,000 a month during the period of mill construction, and then 10% of the net profits to be derived from its operation. Respondent commenced work on November 15, 1959. Appellant paid respondent compensation of $1,500 covering the 2-week period in November, and all of December, 1959. Respondent continued on the job until July 28, 1960, but received no further compensation for his services. He paid certain construction costs of $1,281.16 for which he was not reimbursed. Due to delays in leasing necessary real property, actual construction did not begin until February 15, 1960. Further delays in arranging for the electric power and water supply forestalled completion of the mill until late September 1960. While appellant had invested approximately $100,000 in its construction, the mill never became fully operational, and only a minor quantity of lumber was processed in it during October 1960.

On September 6, 1960, respondent made written demand upon appellant for unpaid salary in the sum of $7,000; upon appellant's refusal to pay the salary and certain construction items, respondent commenced

this action January 5, 1961, for recovery thereof and for attorney's fees.

■■ The trial court did not rule upon the issues presented by appellant's cross-claim. The trial court was correct in not so ruling inasmuch as appellant failed to show the extent of his compensatory damages on account of alleged breach of the contract, and loss of anticipated profits. Belts v. State ex rel. Dept. of Highways, 86 Idaho 544, 388 P.2d 982 (1964); Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Harrington v. Hadden, 69 Idaho 22, 202 P.2d 236 (1949). Moreover appellant's brief does not "contain a distinct enumeration" of any assignment of error committed by the trial court, nor citation of authority or argument thereon, thus precluding review on appeal in the premises. Supreme Court Rule 41; Batchelder v. City of Coeur D'Alene, 85 Idaho 90, 375 P.2d 1001 (1962); Jewett v. Williams, 84 Idaho 93, 369 P.2d 590 (1962).

■■ Appellant contends that the trial court erred in admitting the voucher portion of a check, over appellant's objection, to show a salary payment of $1,500 less applicable tax deductions (including $231.80 federal withholding tax). The date of execution of the check as well as the names of the maker and payee do not appear on the voucher; there is a typewritten notation thereon, "Salary $1500.00," and a pencil written notation, "Nov–Dec." Respondent testified that the voucher was attached to a salary check received from appellant, as compensation for work performed in November and December 1959. The voucher was not offered in evidence to prove the contents of the check, but to show that respondent had received the payment by appellant's check.

■■ Appellant based his objection on the ground that the voucher was not the best evidence of the existence of a check, and that the check itself should have been produced. Such contention is without merit. "The best evidence rule has no application where the witness is not testifying as to the contents of a writing but is merely testifying that a writing has been made." Bell, Handbook of Evidence for the Idaho Lawyer, p. 210 (1957); Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961); Union Cent. Life Ins. Co. v. Nielson, 62 Idaho 483, 114 P.2d 252 (1941); see also Rabb v. North American Accident Ins. Co., 28 Idaho 321, 154 P. 493 (1916); Allen v. W. H. O. Alfalfa Milling Co., 272 F.2d 98 (10th Cir. 1959); IV Wigmore, Evidence, § 1242 (3d ed. 1940). Moreover, as in Union Cent. Life Ins. Co. v. Nielson, supra, appellant testified on cross-examination to substantially the same information, admitting the $1500 salary payment, less a federal withholding tax deduction thereon of $231.80. Such testimony is sufficient in itself to support the trial court's finding that appellant paid such sum of $1500

to respondent "to apply towards such wages."

Appellant's prime contentions on appeal are that respondent has failed to prove a contract of employment between the parties and that respondent was not to receive either salary or a percentage of the net profits until construction was completed and the mill in operation. These contentions are without merit, particularly when considered in the light of respondent's unchallenged testimony; this is to the effect that about November 8, 1959, he and appellant reached a definite agreement whereby during construction of the mill respondent was to receive $1,000 a month, and then "10% of the net profits", and that respondent "would start working * * * November 15th," 1959. That testimony when considered with the testimony of appellant admitting the payment of $1500 as wages or salary to respondent is sufficient to sustain the trial court's finding that appellant employed respondent during the early part of November 1959, under an oral agreement of the parties, to supervise the construction of the mill at a salary of $1,000 a month, and for 10% of the net profits after commencement of milling operations.

The evidence basically shows that, under the contract, it was respondent's responsibility to construct the mill and put it in operation. Respondent had constructed and repaired other lumber mills during his lengthy career as a millwright; his reputation was "the best that I know of," as expressed by respondent's witness, Mr. Austin, who had been a millwright and sawyer for some 35 years.

The record is also replete with testimony showing that in attempting to carry out the duties for which he was being compensated, respondent was hindered and sometimes completely prevented from doing so by appellant's intervening acts.

Although the parties in November 1959 estimated that constructing the mill would take approximately 90 days, appellant did not obtain the lease for the land upon which the mill was to be constructed, until February 19, 1960. Moreover, although respondent was obligated to cause electric power to be brought to the millsite, appellant did not sign an "Electric Service Agreement" with an electric power company nor make the initial advance payment of $7,925 required, until April 22, 1960. Appellant had stated in a prior letter, of March 17, 1960, to the electric power company, "We are not going to give you the go ahead on this installation just at this time as * * * the amount of deposit required * * * is too great and we are investigating other power possibilities." These acts on appellant's part kept electric power from the millsite until June 10, 1960.

Respondent kept appellant fully informed concerning construction of the mill by tele-

phone conversations which, appellant admitted, were had sometimes as often as 4 times a week. Appellant never saw fit to discharge respondent for unsatisfactory performance of his duties under the contract, but continued to grant him extensions of time within which to construct the mill ranging, as appellant testified, from May 1, 1960 to July 5, 1960.

The testimony of both parties demonstrates the reasons for the increases in the cost of the mill, and that appellant agreed thereto and was kept fully informed, as follows:

Respondent's testimony on cross-examination:

"Q. You started in on February 15th. Now did you have any conversation with Mr. Fleishman after this date, on a larger mill?

\*　\*　\*　\*　\*　\*

"A. Well, as time progressed, I observed the timber out there did not fit the small mill that we had previously talked of building. \* \* \* I was informed by Mr. Fleishman that he owned all that timber out there, down to the smallest trees. \* \* \* In checking over different things, in his contract, for one thing, with the timber owners, he had a right to cut timber 14 inches and up, which took a different mill than we had previously talked about.

"Q. You mean he couldn't take anything under 14 inches?

"A. \* \* \* that is what the contract said, 14 inches and larger, on the stump.

\*　\*　\*　\*　\*　\*

"Q. And so in view of that, you designed a bigger mill.

"A. I designed a mill that would fit the timber.

"Q. Did you talk to Mr. Fleishman about that?

"A. I notified him of every purchase I made. Every time I bought a piece of equipment, I informed him what it was, where it was, and what it cost."

Appellant's testimony on direct examination:

"A. \* \* \* Mr. Fish would call me and tell me that he had a piece of machinery located, and wanted to know if it was all right for him to buy it, and I said yes, if you approve."

And on cross-examination, he testified:

"Q. So you knew what you was getting.

"A. Yes, sir.

\*　\*　\*　\*　\*　\*

"Q. And the dates of payment are correct on that Exhibit No. 18, [accounts payable ledger] aren't they?

"A. To the best of my knowledge.

"Q. So most of the payments were made fairly currently. * * * so you knew how much you was paying, didn't you. * * * And when you was paying. * * * And you knew how much money you was getting into this mill all the time.

"A. Yes, sir."

■ The rule of law determinative of the principal issue raised by this appeal has been well stated by Professors Williston and Corbin:

"It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.

"* * * The illustrations of this principle are legion." 5 Williston on Contracts, § 677 (3d ed. 1961).

"One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised. * * *

"It is to be observed that since the defendant's duty to pay was originally conditional on a performance by the plaintiff, the defendant's refusal to pay would not have been wrongful except for the fact that the nonperformance of the condition was unjustly caused by himself. It is his prevention of performance of the condition that makes his refusal to pay a breach of the contract." 3A Corbin on Contracts, § 767 (1960).

See also McOmber v. Nuckols, 82 Idaho 280, 353 P.2d 398 (1960); Gilbert v. California Oregon Power Company, 223 Or. 1, 353 P.2d 870 (1960); Watson v. Aced, 156 Cal.App. 2d 87, 319 P.2d 83 (1957); Fey v. A. A. Oil Corporation, 129 Mont. 300, 285 P.2d 578 (1955); Rogers v. Goodwin, 208 Okl. 110, 253 P.2d 844 (1953); Cladianos v. Friedhoff, 69 Nev. 41, 240 P.2d 208 (1952); Gibbs v. Whelan, 56 N.M. 38, 239 P.2d 727 (1952); Talbott v. Nibert, 167 Kan. 138, 206 P.2d 131 (1949); Wolk v. Bonthius, 13 Wash.2d 217, 124 P.2d 553 (1942); Taylor v. Sapritch, 38 Cal.App.2d 478, 101 P.2d 539 (1940); Restatement of Contracts § 315 (1932).

■ The evidence, while in some instances conflicting, amply supports the trial court's findings and judgment. "Moreover the trial court, not this Court on appeal, resolves the conflicting evidence and determines the weight, credibility and in-

ferences to be drawn from such evidence." Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); see also Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063 (1952).

 Appellant assigns as error the trial court's award of attorney's fees pursuant to I.C. § 45–605, which provides for attorney's fees if the written demand has been made "at least five days before suit was brought, for a sum not to exceed the amount so found due." Respondent in his complaint, alleged that appellant was indebted to him in the amount of $7,000 for seven months' wages and that by reason of his written demand for payment thereof he became entitled to $800 as reasonable attorney's fees, citing I.C. § 45–605 in support of his demand.

The trial court determined that respondent was entitled to "the sum of $6,903.22, which is salary at the rate of $1,000 a month for six months and twenty-eight days." Respondent did not attack that finding by appeal or cross-appeal. Since respondent's demand is greater than the amount the trial court found him to be lawfully entitled, the trial court erred in awarding attorney's fees. Marrs v. Oregon Short Line R. Co., 33 Idaho 785, 198 P. 468 (1921); Annot. 115 A.L.R. 250 (1938); cf., St. John v. O'Reilly, 80 Idaho 429, 333 P.2d 467 (1958); Campbell Cleaning & Dye Works v. Porter (Tex. Civ.App.1944), 183 S.W.2d 253. Such assignment of error is meritorious.

The judgment of the trial court is modified by striking therefrom the award of $800 for attorney's fees. In all other respects the judgment, as so modified, is affirmed. No costs allowed.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.