249 P.2d 814

**TRUSTY et ux. v. RAY et al.**

No. 7883.

Supreme Court of Idaho.

Oct. 31, 1952.

O. R. Baum, Ruby Y. Brown, R. M. Whittier, Pocatello, for appellants.

B. W. Davis, George R. Phillips, Pocatello, for respondents.

PORTER, Justice.

Appellants filed this action to quiet title to 115.47 acres of land located in Bannock County. All the defendants defaulted except respondent, D. C. Ray. Doctor Ray filed answer to the complaint and, as a defense thereto, alleged that he is the owner and holder of a valid mortgage upon the real estate in question; that said mortgage secures a note in the amount of $700; that said mortgage was duly filed of record in the office of the County Recorder of Bannock County, Idaho; and that plaintiffs knew and were advised of said loan at the time of taking possession of the premises in question. As a further defense, said respondent alleged that he is the owner of the premises in question and that plaintiffs had notice of his ownership when they took possession thereof. He prayed that it be decreed that he is the owner of a valid un-paid mortgage upon the premises and that he is owner of said premises.

The cause was tried to the court sitting without a jury. The court found the issues in favor of respondent Ray, refused to quiet title in appellants and quieted title in respondent to an undivided one-half interest in the premises. From such judgment, appellants have appealed to this court.

The record discloses without dispute that respondent Ray is the owner and holder of a real estate mortgage on the premises in question given by Ambrose M. Barrett and Mandy Barrett, his wife, under date of April 28, 1926, to secure the payment of a promissory note in the sum of $700 due one year after date; that said mortgage was duly filed for record on April 30, 1926; and that such note has never been paid.

Appellants are the son-in-law and daughter of Ambrose M. Barrett and Mandy Barrett. They have been married about ten years. Appellant, George W. Trusty, is a building contractor in Pocatello. In the year 1948 he guaranteed and paid certain bills for materials procured for the use of his father-in-law in building a home. Appellants received a deed to the property from the Barretts on June 20, 1949. Mr. Trusty testified that the total consideration for the deed was "somewhat over $4,000"; and that, "those bills that were a part of the exhibit here are materials which I procured for Mr. Barrett,

and he had no way of paying me, and it was agreed finally that I should take the property, paying him more consideration, in addition to those bills, and call the bills square." The reasonable value of the property is not affirmatively disclosed by the evidence.

Doctor Ray testified at the trial that in the year 1927 the Barretts had their attorney prepare a deed to the premises in favor of Doctor Ray in which the consideration was stated to be the release of the note and mortgage and the additional payment of $200 to the Barretts. That the Barretts presented this unsigned deed to Doctor Ray but that he did not accept the deed and the same was never executed. That he loaned $200 to the Barretts. He testified as to the conversation that took place at that time as follows:

"Q. Just state to the Court what that conversation was with reference to the deed and why it was not accepted. A. Mr. Barrett and his wife came into the office. They needed some money, and they had seen Mr. Jeffery and had him make out a deed to release the mortgage, so it wouldn't cost anything to release it, and I said, 'Now, Ambrose, you took up that land and I helped you with it,' I says, 'I would like for you to get out what you put in it as well as myself. If you will keep up the taxes I will get a deed before the mortgage closes,—before the time for the mortgage to close, and if we sell the property we will divide it fifty-fifty.'

"Q. And what did Mr. Barrett say then? A. He said that was perfectly all right with him."

The record also discloses that the taxes on the premises for the year 1926 in the sum of $13.15 were unpaid and that on February 16, 1931, the County Treasurer of Bannock County deeded the premises to Bannock County for the consideration of the delinquent taxes. On April 23, 1931, Bannock County issued a purported redemption deed to said property to Doctor D. C. Ray which was filed for record on May 20, 1931.

We will not discuss separately the numerous assignments of error made by appellants, but will consider the questions raised by such assignments. Appellants contend that they are the purchasers of the premises for value and without notice. That at the time of their purchase, the note and mortgage to D. C. Ray were outlawed and barred by the statute of limitations. And that they are entitled to quiet title against such mortgage. Respondent Ray contends that appellants being in privity with the mortgagors, are barred from quieting title against the unpaid mortgage. The trial court found as a fact that appellants had full knowledge of such note and mortgage and that the same were unpaid at the time of the purchase of the premises. A careful examination of the

record shows there is sufficient evidence to sustain such finding by the court.

█ The general rule is that a mortgagor or his successor in interest cannot quiet title against a mortgagee, while the secured debt remains unpaid, although the statute of limitations has run against the right to foreclose the mortgage. Note 164 A.L.R. 1393. In Gerken v. Davidson Grocery Co., 50 Idaho 315, at page 321, 296 P. 192, at page 193, we said:

\: "There is no more firmly established rule than that the liability to pay a mortgage debt rests upon the mortgaged land as well as upon the mortgagor. A mortgagor cannot without paying his debt quiet title as against the mortgagee; and the same rule applies to the grantee of a mortgagor, who takes the land while it is still burdened with a lien for the security of a debt."

See also, Mendini v. Milner, 47 Idaho 439, 276 P. 313; Miller v. Monroe, 50 Idaho 726, 300 P. 362.

Appellants contend, however, that one who purchases real estate upon which there is a mortgage barred by the statute of limitations at the time of the purchase is not bound to satisfy the. mortgage debt in order to secure decree quieting his title to the property. Note 164 A.L.R. 1396–1397. Such seems to be the holding in Faxon v. All Persons, etc., 166 Cal. 707, 137 P. 919, L.R.A. 1916B, 1209. However,

an examination of such case discloses that the predecessor in interest of the plaintiff purchased the property for a consideration at an executor's sale. There was no privity between the mortgagor and the plaintiff. Fontana Land Co. v. Laughlin, 199 Cal. 625, 250 P. 669, 48 A.L.R. 1308. Moreover, there was no showing in such California case that the plaintiff had any knowledge of the mortgage other than the notice given by the recording thereof.

In Yarlott v. Brown, Ind.App., 132 N.E. 599, 602, 133 N.E. 613, the court quoted from and followed Faxon v. All Persons, etc., supra, but specially pointed out the lack of knowledge by the appellee as follows:

"The only knowledge appellee had of the existence of appellant's mortgage was such knowledge as was disclosed by the mortgage record. This record did not show whether the debt for which the mortgage had been given was paid or unpaid. It did show that appellant's right to foreclose was barred. She purchased the land with reference to the title as disclosed by the record. No part of the purchase price was withheld from the seller for the purpose of paying appellant."

█ It would appear that the evident purpose, intent and meaning of Section 55-817, I.C. (quoted in the dissent of Justice KEETON), was to authorize quieting title of an otherwise outlawed mortgage or other lien, where the only notice the

subsequent purchaser or encumbrancer has, is the record notice of the existence and nonpayment of the mortgage.

The Legislature thus evidently considered that Sections 5–201 and 5–216, I.C. (statutes of limitation), were not in themselves sufficient to justify a suit to so quiet title.

Section 55–817, I.C., does not encompass a situation, as herein, where appellants are not only in privity with the original mortgagors, i. e., immediate and direct grantees, but also had actual knowledge of the existence and non-payment of the mortgage. Recognizing this distinction is in line with the California authorities cited.

■ In the instant case appellants took deed with full knowledge of the existence of the note and mortgage, of the fact that the indebtedness was unpaid and that respondent was claiming some interest in the land. Their rights are not superior to the rights of the Barretts prior to the transfer. Storrs v. Belmont Gold Min. & Mill. Co., 24 Cal.App.2d 551, 76 P.2d 197. The trial court did not err in refusing to quiet title in appellants against the lien of respondent's mortgage.

The trial court found that in June, 1927, Ambrose M. Barrett, in consideration of the $700 loan and the advancement of another $200, agreed to convey to respondent Ray a one-half interest in and to the said real estate. The court further found "that thereafter and on or about the 23rd day of April, 1931, at the instance of Ambrose M. Barrett, who made the payment necessary to procure the same, the County of Bannock, Idaho, issued and delivered to D. C. Ray a redemption deed conveying to him" the real estate described in the complaint. Upon such findings of fact, the court concluded that respondent Ray was the owner of an undivided one-half interest in the real estate. Respondent Ray endeavors to justify such conclusion upon the theory that the claimed oral agreement to convey real estate was fully performed and consummated by the taking of the redemption deed.

■ An examination of the record discloses there is no evidence whatever that the redemption deed was made at the instance of Ambrose M. Barrett or that he made the payment necessary to procure the same or that he knew anything about the issuance of such deed at the time thereof or authorized the issuance of the same in the name of respondent Ray. There is nothing in the evidence to support the court's finding that such redemption deed was issued in accordance with and in performance of an oral agreement by Barrett to convey an undivided one-half interest in the real estate to Ray.

■ The redemption deed purports on its face to be issued in pursuance of Chapter 161, 1923 Session Laws, wherein it is provided as follows:

"In all cases where real estate has been or may hereafter be sold for de-

linquent taxes and the county has become the purchaser, and the time for redemption has expired, or a tax deed has issued to the county, and the county has not disposed of such real estate, the person whose estate has been or may hereafter be sold, or his heirs, executors, administrators, or successors in interest, at any time after the purchase thereof by the county and before the county has disposed of the same, has the right to redeem · such real estate by paying to the county treasurer of the county wherein the real estate is situated, the amount of the original tax or taxes for which said property was sold, (plus certain other items). * * * Upon payment of the amount required to be paid as herein provided the county treasurer must issue a tax deed to the redemptioner, and, upon the giving of such deed, any tax deed, or tax sale or delinquency entry to the county shall become null and void and all right, title, and interest acquired by the county under or by virtue of such tax deed, or tax sale, or delinquency entry, shall cease and terminate."

The redemption deed was not a tax deed given by the county upon a sale to a purchaser. It was a purported deed issued to an alleged redemptioner in consideration of the payment of delinquent taxes. It was executed by Bannock County by the Chairman of the Board of County Commissioners instead of being executed by the county treasurer as provided by the statute. If properly executed in favor of a qualified redemptioner, such a redemption deed, under the quoted statute, would merely cancel and terminate all rights of the county in and to the land acquired by virtue of the treasurer's tax deed.

The mortgage provides for reimbursement to mortgagee for the payment of any taxes. The delinquent taxes paid by respondent became part of the indebtedness secured by the lien of respondent's mortgage. Eaton v. McCarty, 34 Idaho 747, 202 P. 603; Gillette v. Oberholtzer, 45 Idaho 571, 264 P. 229; Union Cent. Life Ins. Co. v. Nielson, 62 Idaho 483, 114 P.2d 252.

From the foregoing, it follows that the court erred in decreeing that respondent is the owner of an undivided one-half interest in the land in question and that appellants are required to pay the taxes thereon.

The findings of fact recite that the cause of action was dismissed as to all defendants except respondent Ray. This is erroneous as the record shows the default of all such defendants was entered; and appellants were entitled to decree against them.

That part of the decree refusing to quiet title in appellants as against respondent's mortgage is affirmed. That part of the decree quieting title to an undivided one-half interest in the lands in question in

respondent and requiring appellants to pay all the taxes thereon is reversed. The cause is remanded with direction to enter judgment in accordance with this opinion. No costs allowed.

GIVENS, C. J., and TAYLOR, J., concur.

KEETON, Justice (dissenting).

I concur in the conclusion reached in this case: "That part of the decree quieting title to an undivided one-half interest in the lands in question in respondent and requiring appellants to pay all the taxes thereon is reversed", and I agree that the facts proved show no title to the land in question in Ray (respondent).

I dissent from that part of the opinion which reads: "The trial court did not err in refusing to quiet title in appellants against the lien of respondent's mortgage".

Under the statutes of this state, respondent Ray held no valid or enforceable mortgage covering the lands in question, nor did he have any interest by lien or otherwise in said lands.

Sec. 55-817, I.C. enacted 1935 Session Laws, Ch. 107, page 256, reads as follows:

"No public record of any mortgage or other lien on real property, given prior to July 1, 1929, shall constitute notice of the existence or contents of such mortgage or lien, to subsequent purchasers or encumbrancers of the property affected thereby, for a longer period than ten years from the date of maturity of such obligation or indebtedness, as changed by extension, if any, of the time of payment, filed for record before the expiration of said period of ten years, except as provided in section 2 hereof. If the public records do not disclose the date of maturity, then the date of the execution of such mortgage or lien shall be deemed the date of maturity of such obligation or indebtedness."

This section was amended by the 1951 Session Laws, Ch. 127, page 295, changing the date "prior to July 1, 1929" to read "prior to July 1, 1945": (Immaterial here.)

The mortgage in question here is dated April, 1926, due in April, 1927, and is clearly outlawed under Sec. 5-216, I.C.

The facts are that Ray never claimed he was paid anything on the mortgage, and did not contend that it was not outlawed. He slept on his rights, if any he had, for some twenty years. When the cases of Miller v. Monroe, 50 Idaho 726, 300 P. 362, and Gerken v. Davidson Grocery Co., 50 Idaho 315, 296 P.192, were decided by this Court, the above quoted statute was not in effect. If applicable the same should be overruled.

In taking title to the land, respondents here did not assume the mortgage nor agree to pay the indebtedness for which it was security. Under such circumstances the respondents had no legal or moral obligation to discharge the debt in question.

The land was not bound either legally or equitably by the claimed mortgage debt which was conclusively shown not to exist. The following cases support this rule: Faxon v. All Persons, 1913, 166 Cal. 707, 137 P. 919, L.R.A. 1916B, 1209; Muhs v. Hibernia Sav. & L. Co., 1913, 166 Cal. 760, 138 P. 352; Fontana Land Co. v. Laughlin, 1916, 199 Cal. 625, 250 P. 669, 48 A.L.R. 1308; Zuege v. Nebraska Mortg. Co., 1914, 92 Kan. 272, 140 P. 855, 52 L.R.A., N.S., 877, Ann.Cas. 1916B, 865; Kingman v. Sinclair, 1890, 80 Mich. 427, 45 N.W. 187, 20 Am.St.Rep. 522; Cunningham v. Davidoff, 187 Md. 134, 46 A.2d 633, 164 A.L.R. 1383.

It seems to me that the rule applicable here could be stated in substance as follows:

"Where one takes a deed to land which is encumbered by a mortgage, but does not assume or agree to pay the mortgage, no personal relation or obligation subsists between him and the holder of the mortgage, and where the mortgage has been long in default and the cause of action thereon barred by lapse of time such vendee has a right to have his title, whatever it might be, cleared of record by a judgment that the mortgage constituted no subsisting lien upon his land."

Whether Trusty knew of the mortgage because of the public record or from personal information seems to me to be of no importance. Why should a vendee have his land encumbered or clouded by an outlawed, unenforceable mortgage, which by no possible deduction or rule he owed or could be required to pay?

The contention that the statute of limitations is a rule of defense and not offense seems to me to have no application in cases such as this. Appellants did not contract the debt or assume it and the land is not liable for it.

I therefore feel that the rule announced in the majority opinion that the appellants could not quiet title to the land in question should be reversed, and the title quieted. I am also of the opinion appellants are entitled to costs.

THATCHER, District Judge (dissenting).

I concur in that part of the majority opinion which reads; "The trial court did not err in refusing to quiet title in appellants against the lien of respondent's mortgage".

I dissent from the conclusion reached in this case that "That part of the decree quieting title to an undivided one-half interest in the lands in question in respondent and requiring appellants to pay all the taxes thereon is reversed".

In the instant case the appellants stand in privity with the mortgagor, Barrett. Having taken title to the property with full knowledge of the mortgage and of the fact that it was unpaid, and with full knowledge of the oral agreement between Barrett and respondent they stand in no

better position than would Barrett himself. While the mortgagor did not initiate negotiations for the oral agreement, nevertheless he accepted the payment of $200 from respondent under that contract and assented to the proposition then made by respondent that the latter should have a one-half interest in the property in the consideration of the $200 and the cancellation of the $700 note. The record is silent as to any repudiation of this agreement by the mortgagor prior to the running of the Statute of Limitations against the mortgage indebtedness.

It is clear from the foregoing that the mortgagee changed his position in reliance upon the oral contract, and that relying thereon he permitted the Statute of Limitations to run against the enforcement of the mortgage. This would seem to bring this case squarely within the general rules of equity pertaining to estoppel to rely upon the Statute of Frauds.

The general rule as to estoppel to assert the Statute of Frauds is set forth in 49 Am.Jur., Section 581, page 888, and subsequent sections to and including that on page 893. A discussion of the subject is found in a note in 75 A.L.R. commencing at page 650. The cases cited by the author of the note referred to in general appear to support the general statement of the rule found in 49 Am.Jur. I deem it unnecessary to quote from the authorities cited except to quote from the case of Knauf & T. Co. v. Elkhart Lake Sand & Gravel Co., 153 Wis.

306, 141 N.W. 701, 704, 48 L.R.A.,N.S., 744, referred to in 75 A.L.R. at 653:

"The statute of frauds was not designed to enable the evil disposed to possess an instrumentality with which to perpetrate fraud. It is the weapon of the written law to prevent fraud while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field. Both are essential to prevent and redress wrongs."

The general rule pertaining to this subject being clearly established there only remains to determine whether the facts of this case make such rule applicable thereto. The trial court found that the oral contract, as alleged by respondent, was made; that the respondent acted upon that oral contract by paying over the sum of $200 and by changing his position with respect to the enforcement of the mortgage in reliance upon the oral contract. What element of the general rule, then, is lacking in this case? Certainly to permit the appellants successfully to interpose the Statute of Frauds will result in the loss to the respondent, not only of any benefit that may have accrued to him by reason of the oral contract, but also the loss of money invested upon the strength thereof and his entire mortgage debt.

There is another reason why the respondent should be granted affirmative relief in this action. The question of estoppel, in addition to being applicable to cases arising

under the Statute of Frauds, is also applicable to cases wherein the Statute of Limitations is interposed as a defense. This question is thoroughly discussed in 34 Am. Jur. commencing at page 323, Section 411, and also in an annotation found in 130 A.L. R., commencing at page 8. The case of Barnett v. Nichols, 56 Miss. 622, while not being squarely in point with the case at bar is in many respects similar thereto. The court said in that case:

"But defendant, having induced complainant to accept his proposition in satisfaction of the debt, and thereby to forbear to take steps to collect it, will not be now allowed to plead the statute of limitations against that debt. Having agreed to make payment in a particular manner, and having practically acted upon this agreement, he cannot repudiate it without a restoration of the status quo. While complainant, by his own folly, fails to get the legal title to which, in justice he is entitled, defendant will not be permitted to add to the bad faith charged against him, by setting up the statute of limitations against the debts which he has induced complainant to believe were paid off."

This case seems to be in harmony with the weight of authorities on this subject. The fact that the respondent "by his own folly" failed to get the legal title to which he was entitled would be no reason for permitting the mortgagor, or those in privity with him, to repudiate the oral agreement.

Although the respondent in his answer alleged that he was the owner of a valid unpaid mortgage upon the lands involved in this action and also that he was the owner of the lands, it does not appear that he sought relief by way of foreclosure of such mortgage. Hence, the defense of the Statute of Limitations was not directly raised by respondent and such defense was not passed upon by the trial court. However that may be, counsel in their briefs assumed that foreclosure of the mortgage was barred by the statute and that respondent would be entitled to no affirmative relief in that respect. The effect of this assumption upon the conclusions reached was the same as though the defense had been raised and upheld.

We are thus confronted with a situation where the appellants, seeking to quiet title against an unpaid mortgage and against the so-called redemption deed, held by the mortgagee are permitted successfully to interpose the defense not only of the Statute of Frauds but also of the Statute of Limitations. The result is that the mortgagee loses his mortgage debt, his $200 paid at the time the oral contract was made and the appellants, while not having their title quieted as to the mortgage, do have a judicial determination that the mortgage is unenforceable, which in practical effect amounts to the same thing.

A court of equity once having obtained jurisdiction may retain the case for all purposes of doing justice between the parties. Many decisions of this court have upheld this general statement.

It is my conclusion that the appellants are estopped from asserting the bar of the Statute of Frauds against the enforcement of the oral contract and that the decree of the trial court should be affirmed. It is further my conclusion that the appellants are estopped by reason of the oral agreement from invoking the bar of the Statute of Limitations against the enforcement of the mortgage, and that if the decree of the trial court is not to be affirmed with respect to the enforcement of the oral contract, the case should be remanded to the trial court with instructions to permit the respondent to amend his pleadings to conform to the proof and to permit him to seek the affirmative relief of foreclosure of the mortgage.