732 P.2d 371

**Susan D. McPHERSON,**
**Plaintiff-Respondent,**

v.

**Larry D. McPHERSON,**
**Defendant-Appellant.**

**No. 16281.**

Court of Appeals of Idaho.

Jan. 30, 1987.

Stephen J. Blaser, Blackfoot, for defendant-appellant.

Steven Anthony Thomsen, Pocatello, for plaintiff-respondent.

BURNETT, Judge.

This appeal comes to us from an order of the district court upholding a judgment in favor of the plaintiff-wife in a divorce action. The question presented is whether the magistrate erred by striking the husband's answer and counterclaim for refusing to answer interrogatories. The husband contended that the interrogatories

sought information privileged under the Fifth Amendment. For reasons explained below, we conclude that the husband was not entitled to invoke the constitutional privilege.

The facts essential to our opinion are undisputed. Susan McPherson filed a complaint for divorce. Larry McPherson, acting *pro se*,[1] filed an answer and a counterclaim seeking custody of the parties' minor children. Shortly thereafter, the wife submitted a set of interrogatories to her husband. He answered most of the questions, but refused to answer several on the ground that doing so would incriminate him. The wife then moved to compel answers. After a show-cause hearing, the magistrate ordered the husband to respond within fifteen days or face possible sanctions. No answers were forthcoming. The wife filed two more motions and two additional hearings were held. After the third hearing, the court entered an order requiring McPherson to answer two interrogatories relating to his age, education and employment history. The order recited that if the husband did not comply, his answer and counterclaim would be stricken pursuant to I.R.C.P. 37(b). McPherson continued to refuse. A "judgment by default" was entered for the wife. The husband appealed to the district court, where the judgment was affirmed. He has appealed again, bringing the case before us.

## I

McPherson argues that the magistrate erred in failing to honor his Fifth Amendment privilege against self-incrimination. The magistrate made no written findings of the facts relating to this issue. However, because the pertinent facts are uncontroverted, and because the assertion of a constitutional right presents a question of law, we will exercise free review upon the existing record.

## A

■ The Fifth Amendment is not limited to protecting an individual from being called involuntarily as a witness against himself in a criminal prosecution. It also accords him a privilege against answering official questions in other proceedings, civil or criminal, where the answers might be used to incriminate him in a future prosecution. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The individual may remain silent without suffering a sanction or penalty that would make assertion of the privilege "costly." *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). This protection extends to information that could furnish a link in a chain of evidence leading to prosecution. *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). *See generally* Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis*, 39 BROOKLYN L.REV. 121 (1972). Consequences other than criminal prosecution—such as disgrace, pecuniary loss or liability for civil damages—are not sufficient to invoke the privilege. *Id.*

■ Moreover, the privilege must be supported by more than a vague, subjective fear of prosecution. The protection afforded by the Fifth Amendment is confined to instances where the individual

has a reasonable cause to apprehend danger from a direct answer. [He] is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if it clearly appears to the court that he is mistaken.

*Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Thus, although the task of discerning what is self-incriminating and what is non-incriminating may fall initially upon the person

---

**1.** It appears that the husband represented himself in the magistrate division and in the district court. He engaged counsel to represent him in the present appeal.

asserting the privilege, the responsibility for weighing the objective reasonableness of a fear of prosecution lies with the court. *National Life Insurance Company v. Hartford Accident and Indemnity Company,* 615 F.2d 595 (3d Cir.1980).

 In determining whether the answer to a question (or an explanation of why it cannot be answered) might be incriminating, the judge must consider the context of the propounded question. *Hoffman v. United States, supra.* The Idaho Supreme Court has adopted the same approach, quoting with approval the following language in *United States v. Neff,* 615 F.2d 1235, 1239–40 (9th Cir.1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980):

> [A] trial judge must examine the "implications of the question[s] in the setting in which [they are] asked.... " [Citations.] He "[m]ust be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." [Citations.] If the trial judge decides from this examination of the questions, their setting, and the peculiarities of the case, that no threat of self-incrimination exists, it then becomes incumbent "upon the defendant to show that answers to [the questions] might criminate him." [Citations.] This does not mean that the defendant must confess the crime he has sought to conceal by asserting the privilege. The law does not require him "to prove guilt to avoid admitting it." [Citations.] But neither does the law permit the defendant to be the final arbiter of his own assertion's validity.

*Idaho State Tax Commission v. Peterson,* 107 Idaho 260, 262, 688 P.2d 1165, 1167 (1984). The individual must sketch a plausible scenario of how a potential response would provide direct or circumstantial evidence of criminal conduct or clues leading to evidence of criminal conduct. Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 YALE L.J. 1062 (1982).

## B

 In the present case, as we have noted, the husband refused on Fifth Amendment grounds to answer two interrogatories. The first interrogatory recited: "Please state your age, the highest level of education you have obtained and any professional or vocational training or experience that you have acquired or any other specialized skills which you possess." The second interrogatory recited: "Please state your employment history for the past five years." These interrogatories plainly sought information relevant to fixing an appropriate level of child support if custody of the children were vested in the wife. The interrogatories also may have been germane to determining a just division of community property.

At the final show-cause hearing, a colloquy ensued between the magistrate and the husband:

THE COURT: You give your age at 37, and then you object on the ground that the information requires you to be a witness against yourself.

MR. McPHERSON: Yes, sir. That's correct.

THE COURT: How? How does it?

MR. McPHERSON: There are many laws that if I give information against myself, according to that, that I might be brought into some kind of criminal—what?—criminal activity.

THE COURT: All right.

MR. McPHERSON: And that's why—

THE COURT: Do you say that if you state the highest level of education you obtain, you may be subject to criminal prosecution?

MR. McPHERSON: I might. I don't know, Judge.

THE COURT: Why?

MR. McPHERSON: I don't know. But I've researched it out and gone to the Supreme Court cases, and some of them say if you even—it might be a link in a chain. It might be the first link; and if I give that—if you'll just wait a

second, I'll find it. Okay. *U.S. versus Wiseman* [2] says—

THE COURT: All right. Just a moment. No. 2, "Please state your employment history for the past five years." You object that you'd be a witness against yourself—

MR. McPHERSON: Yes, sir.

THE COURT:—tending to incriminate you. How?

MR. McPHERSON: If I was employed in some kind of fraud and I admitted that, that would be the first link in the chain. Then I would have admitted to fraud. Then I could be prosecuted for some crime or criminal activity; or if I admitted to being a drug pusher or, you know, some other thing that is clearly—

THE COURT: All right.

The husband obviously failed to sketch any plausible scenario of how answers to these interrogatories would lead to criminal prosecution. Nothing in the questions, or in their context, gave reasonable cause to apprehend danger.

This case stands in sharp contrast to others where assertions of the Fifth Amendment privilege have been upheld. For example, in *Maness v. Meyers, supra,* the United States Supreme Court held that an attorney could not be held in contempt for advising his client to withhold material requested in a state civil proceeding. The attorney believed in good faith that the material tended to incriminate his client. At a hearing on a motion to quash the subpoena, the attorney informed the trial judge that the material consisted of sexually explicit magazines and that his client previously had been convicted for distributing such material. Based on this showing, the Supreme Court declared that "at the very least, a reasonable basis for petitioner to assume that a risk of further criminal prosecution exists." 419 U.S. at 469, 95 S.Ct. at 596.

In *Duffy v. Currier,* 291 F.Supp. 810 (D.Minn.1968), the defendant invoked the Fifth Amendment during a deposition in an automobile accident case. Earlier he had admitted, in answers to interrogatories, that he drove the car involved in the accident and that he had consumed several cans of beer. The court noted that further answers posed a risk to the defendant of prosecution for negligent homicide.

> In view of the fact that there was a death in this case, that the defendant admitted drinking beer and driving the car involved in the accident ... and the liberal application which the privilege has been accorded, the court cannot say that there was no danger of self-incrimination.

*Id.* at 814.

In these cases and others like them, the assertion of a Fifth Amendment privilege has been sustained when the court could determine from the questions and their context, or from a showing made by the party claiming the privilege, that a reasonable possibility of criminal prosecution existed. No such reasonable possibility is disclosed by the record before us. Accordingly, we agree with the district court that the magistrate acted properly in rejecting the husband's claim of Fifth Amendment protection and in directing the husband to answer the interrogatories. *See, e.g., Capitol Products Corporation v. Hernon,* 457 F.2d 541 (8th Cir.1972); *In re Gwydir,* 91 A.D.2d 995, 457 N.Y.S.2d 856 (1983).

## C

■ We further conclude that the magistrate acted within the permissible bounds of his discretion by striking the husband's answer and counterclaim, enabling his wife to proceed to judgment. Rule 37(b), I.R. C.P., authorizes a court to strike the pleadings of a party disobeying a discovery order. Numerous reported decisions also have held that a court has inherent authori-

---

**2.** Our research fails to disclose a United States Supreme Court opinion in a case entitled *United States v. Wiseman.* There is a case so entitled in which the Supreme Court denied certiorari. *See United States v. Wiseman,* 445 F.2d 792 (2d Cir.1971), *cert. denied sub nom,* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971). However, that case contains no discussion of any Fifth Amendment issue. The husband's briefs on appeal do not cite a case by this name.

ty to apply such sanctions when a party refuses to comply with discovery, making an invalid assertion of privilege. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909) (striking cross-claim and entering default judgment); *Geldback Transport, Inc. v. Delay*, 443 S.W.2d 120 (Mo.1969) (dismissal of cross-claim); *Annest v. Annest*, 49 Wash.2d 62, 298 P.2d 483 (1956) (testimony stricken). We agree with these decisions but we base our holding today specifically on Rule 37(b).

The husband argues that the magistrate entered the judgment by "default" without according him a three-day notice under I.R.C.P. 55(b)(2). It is far from self-evident that a "default" resulting from a discovery sanction falls within the purview of Rule 55(b)(2). However, we need not decide that question today. Even if the husband were entitled to a three-day notice, we think he received it. The magistrate's final discovery order warned that the husband's pleadings could be stricken and that the wife could obtain judgment. In addition, the order striking the answer and counterclaim stated, "Plaintiff is free to proceed to judgment as provided by law and the Idaho Rules of Civil Procedure." We deem this to be adequate notice under Rule 55(b)(2).

## II

The wife has requested costs and attorney fees on appeal. The magistrate made a similar award below, pursuant to I.C. § 32–704. We believe this appeal was brought unreasonably and without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). The husband has presented neither a genuine legal issue nor a cogent challenge to the judge's exercise of discretion. Accordingly, we award fees under I.C. § 12–121. We remand the case for the magistrate to fix an appropriate amount, utilizing the criteria contained in I.C. § 32–704.

The order of the district court, upholding the magistrate's judgment, is affirmed. Costs (including attorney fees) to the respondent, Susan McPherson.

WALTERS, C.J., and SWANSTROM, J., concur.