47 P.3d 1250

Patricia R. McGill HARDY,
Plaintiff–Respondent,

v.

Michael N. McGILL and Donna M.
Valdez, Defendants–Appellants.

and

Harry Hanson, David Echevarria, The Turf Club, a limited partnership, Alloway Electric Company, Inc., Myrtle A. Baldwin Hanson, State of Idaho, ex rel., Industrial Commission, Park, Costello & Burkett, a partnership, Idaho State Tax Commission, Central Paving, Inc., an Idaho corporation, Martin F. Ward, and all other persons, known or unknown, claiming any right, title, estate, lien or interest in the real property described in this complaint and more commonly known as "The Turf Club" in Garden City, Idaho: adverse to Plaintiff's ownership or interest thereto, Defendants–Respondents.

No. 26993.

Supreme Court of Idaho,
Boise, February 2002 Term.

Feb. 23, 2002.

Vernon K. Smith, Boise, argued for appellants.

Ringert, Clark Chtd., Boise, for respondent Hardy. Joseph B. Jones argued.

Gordon Law Offices and Huntley, Park, Thomas, Burkett, Olsen & Williams, Boise, for respondent Hanson (see note below). Phillip H. Gordon and W. Anthony Park argued.

WALTERS, Justice.

This is a dispute between parties to a real estate purchase contract. The appeal arises following the district court's grant of Harry Hanson's motion for summary judgment and a partial grant of Patricia Hardy's motion for summary judgment. The district court found that the payment of delinquent taxes by Michael McGill and Patricia Valdez ("Appellants") erased a tax controversy and that the Appellants must still abide by the contract of sale. The district court further found that a constructive trust, to the extent that the Appellants held title, resulted in Hardy's favor. A subsequent court trial was held concerning the sufficiency of default notifications. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

G.R. McGill and Frances Earl sold "The Turf Club" including the building, liquor license and other real property to Ms. Baldwin and Ms. Wilson by way of a contract of sale dated February 11, 1980. Harry Hanson ("Hanson" or "buyer") succeeded to the buyers' interest in the property.[1] In the interim, G.R. McGill and Frances Earl passed away.

---

1. Harry Hanson acquired by assignment the interests of the original buyers of the property under the Contract of Sale which is the subject matter of this litigation. Although he was named as a defendant in this action and is identified in the caption of this case as a Respondent, the Respondent's brief filed on this appeal discloses that Hanson assigned his interest to Michael Cracchiolo and Michael McCormick while this case was pending in the district court, and that Mr. Cracchiolo has since sold his entire interest to Mr. McCormick. For convenience, however, we will continue to refer to the buyer or the respondent in this case as "Hanson."

Patricia Hardy ("Hardy") and Michael McGill ("McGill," "seller" or "Appellant") became the beneficiaries of the McGill estate, which included a portion of the future escrow payments from the contract of sale of the Turf Club. Frances Earl's interest was transferred to Donna Valdez ("Valdez," "seller" or "Appellant").

On January 9, 1996, Ada County ("County") seized the property because Hanson had failed to pay taxes on the real property for the tax years 1992–1995. McGill first became aware of the County's tax deed; Valdez became aware shortly thereafter. In an effort to protect their interest in the property, McGill and Valdez quickly took steps to pay the taxes and costs owed to the county. On January 24, 1996, the County issued a redemption deed in the names of McGill and Valdez. Following the issuance of the redemption deed, the Appellants took possession of the Turf Club and closed the escrow where the contract of sale was lodged. Hardy was not included in the Appellants' endeavors.

Hardy filed a complaint on May 9, 1996, seeking damages and a decree of quiet title declaring Hardy as one of the fee simple owners of the Turf Club property. The Appellants filed a counterclaim to declare a forfeiture of Hardy's and Hanson's interests in the property. Hanson filed a counterclaim alleging that his forfeiture should be set aside as a result of the failure of the Appellants to properly comply with the contract of sale with regard to the default notifications.

On March 14, 1997, the Appellants served Hanson with a "Notice of Intention to Declare Forfeiture" ("first default notice"). Thereafter, both Hardy and Hanson filed motions for summary judgment. The district court granted Hanson's motion for summary judgment and partially granted Hardy's motion for summary judgment. The district court found that the redemption by payment of the delinquent taxes by the Appellants erased the tax problem; however, the Appellants must still abide by the contract of sale. The district court also determined that Hanson had not received a proper notice of default as specified by the contract of sale. Further, the district court determined that

when the Appellants paid the property taxes owed to the county, a constructive trust resulted in Hardy's favor, so long as Hardy paid her proportionate share of costs associated with protecting the Turf Club property.

Two additional default notices were served upon Hanson by the Appellants on November 7, 1997 and December 4, 1997 ("second and third default notices," respectively). Both notices were objected to by Hanson. On January 20, 1998, the district court determined that the third default notice gave Hanson "substantial notice to the buyer of the basis for the default and what was necessary to cure the default." The order allowed Hanson twenty-four days from January 20, 1998, to cure the default. On February 13, 1998, Hanson tendered $90,630.65 to the court as an estimate of the amount needed to cure the default.

Following a hearing on various motions, the district court issued an order on August 3, 1998, attempting to clarify the extent to which the default notices required compliance. The district court found "the issue of the liquor license and whether or not the sellers gave consent for tranference [sic] in return for the buyer giving up any interest he may have had in the contract is a question this court must determine before any further motions may be considered." A hearing on the issue of the liquor license commenced on September 20, 1998. After the presentation of a portion of the testimony, the district court decided that the issue would need to be addressed at trial, along with the other remaining issues.

In anticipation of trial, the parties entered into a stipulation, which was reflected by the court's pre-trial order. The issues to be tried were 1) all issues raised by the Appellants in the second and third default notices; and 2) all issues raised by Hanson relating to the offsets with respect to the fair rental value of the Turf Club, repairs, etc., that Hanson was claiming.

A court trial was held on July 8–9, 1999, and November 22, 1999. The parties then submitted written closing arguments and proposed findings of fact and conclusions of law. Following the submissions, one of Han-

son's two assignees declared bankruptcy and the action was stayed by the U.S. Bankruptcy Court. The stay was lifted on March 21, 2000.

On May 19, 2000, the district court filed its Memorandum Decision and Order. The district court found that Hanson's deposit with the court was timely and sufficient to be a good faith estimate to cure default. The first and second default notices were found to be invalid, however the third default notice was valid and the default had been cured by Hanson and/or his assignees. The district court further found that the Appellants and Hardy waived their right to declare the transfer of the liquor license to be an incident of breach of contract, and the waiver was by the time the Appellants sent the second default notice. Among other things, the district court also found that Hanson was the prevailing party and awarded attorney fees and costs to his assignee pursuant to the contract of sale.

On September 7, 2000, an Order and Judgment was filed by the district court. The order set forth the amounts that each of the parties was entitled to under the contract of sale. The order also set forth the amount of attorney fees awarded to Hanson's assignee to be paid for by the Appellants. An amended order quieting title to the Turf Club in Hanson's assignee, McCormick, was filed October 5, 2000. McGill and Valdez appeal.

## ISSUES ON APPEAL

1. Did the deed from the tax assessor's office convey the County's ownership interests to the Appellants and forfeit any ownership of Hardy and Hanson?

2. Did the district court err by failing to find that Hanson had waived, abandoned or was estopped from claiming an ownership interest in the real property?

3. Did the district court err by determining Hanson's forfeiture caused by the tax deed was set aside upon the Appellants acquiring the County's interest?

4. Did the district court err by ruling the Appellants were secured parties?

5. Did the district court err in ruling that the Appellants owed a duty to Hardy, as a former owner, under a constructive trust?

6. Did the district court err in concluding that the Appellants wrongfully exercised control over the real property as deeded to them by the County, when they exercised their ownership rights?

7. Did the district court properly apply the previous orders of the district court in the case?

8. Were the default notices issued by the Appellants sufficient to call the buyer's attention to the concerns of default and make the buyer aware of the need to cure those matters within thirty days?

9. Did the district court err by finding that the Appellants waived or consented to the transfer of the licenses and permits by Hanson?

10. Did the district court err in ruling that Hanson was entitled to damages as the prevailing party under the facts of this case?

11. Did the district court err in awarding attorney fees and costs to Hanson and his assignees?

12. Are any of the parties entitled to attorney fees on appeal?

## STANDARD OF REVIEW

The issues in this case encompass two aspects of the proceedings in the district court. Several issues are raised with regard to the district court's grant of motions for summary judgment; others relate to the district court's findings and conclusions entered after a bench trial.

██ With respect to appellate review of a district court's decision on a motion for summary judgment, this Court applies the same standard used by the district court when that court ruled upon the motion. Summary judgment must be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *see also Friel v. Boise City Housing Authority,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). On review, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Construction Management Systems, Inc. v. Assurance Co. of America,* 135 Idaho 680, 682, 23 P.3d 142, 144 (2001). However, if the evidence reveals no disputed issues of material fact, and only a question of law remains, this Court exercises free review. *Hines v. Hines,* 129 Idaho 847, 850, 934 P.2d 20, 23 (1997).

A different standard applies when we review the findings and conclusions reached by a trial court following a bench trial. We recently explained this standard in *Conley v. Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999):

Review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. A trial court's findings of fact in a court tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. However, we exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. [Citations omitted.]

## DISCUSSION

### I.

■ The Appellants argue that the redemption deed issued by the County conveyed title to the Turf Club property and that Hanson's and Hardy's ownership interest was forfeited upon the conveyance. The Appellants assert that they were entitled to recover the judgment in the quiet title summary proceedings against all ownership interests claimed by Hardy and Hanson. The Appellants further contend that the district court neither had nor provided any authority to empower it to reinstate the forfeited ownership interests. Hanson argues that the sole effect of the redemption deed was to terminate the County's acquired interest. Hanson asserts that the purpose behind I.C. § 63–1124 (now codified at § 63–1007) and § 63–1140 (now codified at § 63–1010) is to aid the County in collecting taxes, not acquiring private property.

The district court found that once the sellers stepped in and redeemed the property by payment of the tax delinquency, the redemption deed merely erased the tax problem, but the sellers must still abide by the contract of sale in existence with the buyer. The district court then found that the contract contained a provision for the payment of taxes by the buyer and contained a procedure to put the contract into default, if the taxes were not timely paid.

Idaho Code § 63–1109 (now codified at § 63–907) provides that an entry of a tax delinquency will have "the force and effect of a sale to the tax collector as grantee in trust for the county, for all property entered upon the real property assessment roll. . . ." Once the tax delinquency entry is made, the county is deemed to be the purchaser of the property described in the delinquency entry and any payment of the taxes by the owner or other person is a redemption of the property from the tax sale. I.C. § 63–1114 (now codified at § 63–1001). Further, I.C. § 63–1123 (now codified at § 63–1001) states that any delinquency entry shall constitute a lien on the property in favor of the county for all taxes, penalties and interest owed and entitles the county to a tax deed for the property.

Idaho Code § 63–1124 provides:

After the issuance of a tax deed, property may be redeemed only by the record owner, or owners, or party in interest, up to the time the county commissioners have

entered into a contract of sale or the property has been transferred by county deed. In order to redeem real property, the record owner or owners, or party in interest shall pay all delinquency including the penalty, accrued interest, and costs, including, but not limited to, title search fees. The taxes accrued, including the current calendar year, against such property subsequent to the issuance of a tax deed to the county shall be extended upon a valuation to be given by the assessor upon application of the treasurer.....

Idaho Code § 63–1140 states:

In all cases where real estate has been or may hereafter be sold for delinquent taxes and a deed has been issued to the county therefor, and redemption has been made in the manner provided and in accordance with the provisions of section 63–1124, the county treasurer, as ex officio tax collector, must issue a deed to the redemptioner; and upon the giving of such deed, such tax deed so issued to the county and the delinquency entry and tax sale upon which the same is based and all delinquency entries and sales for prior year delinquent taxes shall become null and void, and all right, title and interest acquired by the county, under and by virtue of such tax deed, or tax sales, or delinquencies, shall cease and terminate.

■■■ Idaho law makes it clear that the redemption deed is not a tax deed given by the county upon a sale to a purchaser; it is a deed issued to a redemptioner in consideration of the payment of delinquent taxes. *Trusty v. Ray*, 73 Idaho 232, 236, 249 P.2d 814, 818 (1952). A redemption deed simply cancels and terminates all rights of the county in and to the land acquired by virtue of the treasurer's tax deed. *Id.; see also* I.C. §§ 63–1124, –1140.

The delinquent taxes paid by the Appellants became a part of the indebtedness protected by the Appellants' and Hardy's contract of sale. *Id.* (citing *Eaton v. McCarty*, 34 Idaho 747, 202 P. 603 (1921); *Gillette v. Oberholtzer*, 45 Idaho 571, 264 P. 229 (1928); *Union Cent. Life Ins. Co. v. Nielson*, 62 Idaho 483, 114 P.2d 252 (1941)). The taxes paid by the Appellants became an additional

amount owed by Hanson. The contract of sale provides for the payment of taxes and the default procedures to be followed when the taxes or other obligations are not paid. The default provisions of the contract of sale must be followed prior to forfeiture.

The Court holds that the district court properly found that the Appellants' redemption deed merely erased the taxes owed to the county and the Appellants must still abide by the contract with Hanson. The Court further holds that the district court did not err by finding that the Appellants were not entitled to quiet title in their names.

## II.

The Appellants argue that the district court erred when the court failed to find it was undisputed that Hanson had waived, abandoned or was estopped from claiming an ownership interest in the Turf Club. Although the Appellants urged the district court to apply concepts of waiver, abandonment or estoppel to Hanson's nonperformance of conditions of the contract, the court rejected those arguments. Instead, the court found that, the contract of sale mandated a procedure for the sellers to follow in the event of any failure of performance by Hanson and that this procedure was not followed by the sellers. The court's findings in this regard are supported by substantial, competent evidence and are affirmed.

## III.

■■ The Appellants assert that the district court erred by determining that Hanson's forfeiture caused by the tax deed was set aside upon the Appellants acquiring the County's interest. The Appellants contend that Hanson should not have been entitled to any equitable relief since he had acted in bad faith by not paying the property taxes. The Appellants further argue that the district court erred in finding that they wrongfully exercised control over the Turf Club following the issuance of the redemption deed by the County. Hanson argues that the redemption deed returns to the status quo; and the buyers have an additional obligation to repay the sellers for the funds expended

on the taxes, in addition to the sums owed under the contract of sale.

The district court found that the contract contemplated the payment of taxes and provided a procedure to be followed by the sellers when the taxes were not paid in a timely manner. The district court concluded that a proper default notice must be issued to the buyer before his interest may be forfeited.

■■■ Although forfeitures are not favored in the law, contracts expressly providing for forfeitures generally will be upheld. *Castleberry v. Hay*, 8 Idaho 670, 70 P. 1055 (1902). "Any forfeiture must strictly follow the terms of the contract, *Stockmen's Supply Co. v. Jenne*, 72 Idaho 57, 237 P.2d 613 (1951), and the terms of a notice of default or termination, *Marks v. Strohm*, 65 Idaho 623, 150 P.2d 134 (1944)." *Keesee v. Fetzek*, 106 Idaho 507, 512, 681 P.2d 600, 605 (Ct.App. 1984).

The terms of the contract of sale detail the steps that must be taken to declare a default and subsequent forfeiture by Hanson. Despite the fact that Hanson may not have paid for rent or taxes for years, both parties needed to comply with the terms and conditions of the contract. The sellers failed to comply with the terms and conditions of default. Therefore, Hanson has not yet forfeited his interest. Hanson should have remained in control of the Turf Club property, until a conforming default and subsequent forfeiture were declared as provided for by the contract of sale, following the issuance of the redemption deed.

The Court holds that the district court did not err by finding that the Appellants must comply with the contract of sale prior to a forfeiture of Hanson's interest being declared.

### IV.

■■■ The Appellants assert that the district court erred by reinstating the ownership interest of Hanson because they did not receive the redemption deed as a secured creditor and therefore, they do not need to abide by the contract of sale. Hanson argues that the redemption deed returns to the status quo, requiring the buyers to perform their obligations under the contract of sale.

The district court found that "once a secured creditor steps in and rescues property which has delinquent taxes on it, the redemption deed merely erases the tax problem, but the secured creditor must still abide by the contract."

Although the district court used the term "secured creditor" to describe the sellers, the label is immaterial. In *Trusty*, the sellers were secured creditors, however in this case the sellers are not. *Trusty v. Ray*, 73 Idaho 232, 236, 249 P.2d 814, 818 (1952). The holding of *Trusty* is, however, still analogous to this case. The sellers must still comply with the contract of sale, whether or not they are a secured creditor. Here, the sellers failed to comply with the terms of the contract requiring a proper notice of default, and the contract can only be enforced following a conforming default notice and sufficient amount of time for cure.

This Court affirms the district court's finding that the Appellants by paying the delinquent taxes merely erased the tax deficiency and that the contract of sale still controlled.

### V.

■■■ The Appellants argue that the district court erred by finding that Respondent Patricia Hardy held an ownership interest in the property and that the property was subject to a constructive trust for the benefit of Hardy to protect that interest. They contend that they did nothing inequitable when they paid the tax delinquency and obtained a deed in their names without including Hardy, which would justify the imposition of a constructive trust as a result of the transaction.

We need not decide whether the district court properly held that a constructive trust was created. The record clearly shows that Respondent Hardy had an ownership interest in the property that remained after the property was redeemed by the payment of the taxes to the county treasurer. The district court correctly concluded that Hardy's interest must be recognized, leaving her in the position of one of the sellers under the contract.

## VI.

The Appellants argue that the district court failed to properly apply the previous orders of the district court in the case. The Appellants assert that when Judge Wilper assumed this case that he failed to recognize that his predecessor, Judge Newhouse, had previously found that the second and third default notices were valid and that the liquor license default needed to be cured.

In the pre-trial order, all of the prior orders were incorporated and were listed as items that were undisputed and not to be addressed at trial. Further, the Memorandum Decision and Order issued following the trial, thoroughly discusses each of the previous orders issued during the pendency of the case.

The record does not show that the second notice of default was ruled upon definitively by Judge Newhouse, prior to his retirement from the case. In an attempt to clarify the status of the default notices, an order was issued on August 23, 1998, declaring that the issue of the liquor license remained. A hearing on the status of the liquor license began, but Judge Newhouse concluded the hearing without ruling and reserved the issue for trial. Since the issue of the liquor license was only raised in the second default notice, the record supports that the second default notice was not determined valid prior to Judge Newhouse's retirement.

This Court holds that the district court properly applied the previous orders and found that the validity of the second default notice was an issue for trial.

## VII.

The Appellants argue that the default notices were sufficient to call the buyers' attention to the concerns of default and made the buyers aware that they had thirty days to cure.

The contract of sale provides that the buyers shall pay all taxes, assessments and licenses assessed against the premises. In the event of a default, the contract of sale provides that if

Buyers fail or neglect to make any payment of principal, interest and taxes, when due and before the same become delinquent, or fail or neglect to carry out the other terms and conditions of this contract, to be performed by Buyers, then the Contract shall be in default, and upon a default occurring, Sellers may cause a written notice in duplicate addressed to Buyers, to be prepared, calling Buyers' attention to the matters then in default or on account of which a breach is claimed. . . .

. . .

Buyers shall have thirty (30) days from the mailing of said notice within which to make good any matters in default or on account of which a breach is claimed, or to disprove the same and not more than two (2) notices of default in one year shall be required of the Sellers and the third notice shall be considered as final during the lifetime of this Contract. The expense of preparing any such notice shall be added to the unpaid balance on the Contract and become payable with the next installment and be in addition to said amount then due and owing.

The district court found that the first default notice did not call "[b]uyers' attention to the matters then in default or on account of which a breach is claimed." The district court found that the first default notice was invalid because it failed to set forth the default and state what Hanson must do to cure the default. Additionally, the district court determined the full amount of the contract could not be due and owing since the forfeiture clause of the contract cannot be invoked until the default process has been completed.

The first default notice recites a lump sum that is presently due and owing, however it does not give a break down of what is included in this amount nor does it set forth what Hanson must do to cure the default. The first notice is clearly insufficient and does not meet the requirements of the contract of sale.

As stated above, the record does not show that the district court definitively ruled upon the second default notice prior to Judge Newhouse's retirement. Judge Newhouse issued an order on August 3, 1998, in an attempt to clarify the status of the default

notices; the order revealed that the issue of the liquor license remained. Although a hearing began on the status of the liquor license, Judge Newhouse ended the hearing without ruling and reserved the issue for trial. In the pre-trial order, the Appellants stipulated that the second and third default notifications were still at issue. Following trial, the district court found that the second default notice was invalid.

■ After reviewing the notice, it is apparent that the second default notice contains many of the same terms as contained in the third default notice with a lot fewer details of how the amounts came to be. A notable difference is that the second default notice states that the buyers have defaulted by transferring the liquor license, whereas the third default notice is silent on the issue of the liquor license. As Hanson pointed out, there are still deficiencies with the second default notice, including 1) the notice failed to state a place for payment to be sent since the contract of sale stated payments were to be made to the escrow which had been closed; 2) escrow costs were requested for an escrow that no longer existed; 3) the default notice did not provide the amount needed to be paid to effect a cure; and 4) acceleration of the contract cannot occur unless the thirty days allowed for cure have passed. The second default notice is better than the first default notice, however it fails to break down many of the costs that the Appellants claim Hanson owes. The second notice does not call the "[b]uyers' attention to the matters then in default or on account of which a breach is claimed."

The district court found that the third default notice was adequate. This Court agrees.

This Court holds that the district court's finding that the first and second default notices were invalid is supported by substantial, competent evidence. The Court affirms the district court's finding that the third default notice was valid.

## VIII.

■ The Appellants assert that they did not waive or consent to the transfer of the liquor license from Hanson to the new assignees of the Turf Club. Hanson asserts that no claim of default based on assignment of the liquor license was raised to the district court, therefore, the issue of assignment was not tried before the district court.

The district court found that the Appellants and Hardy, through the actions of McGill, waived their right to claim the transfer of the liquor license as an incident of default by Hanson. The argument that there is not substantial, competent evidence to support this finding is unpersuasive. Many of the witnesses at trial testified that McGill acknowledged that Hanson was the owner of the liquor license and consented to the transfer of the license from Hanson to his assignees. Further, at one point during McGill's testimony, he acknowledged that Hanson owned the liquor license, despite testifying to the contrary as well.

■ The Appellants contend that the district court incorrectly found that McGill's testimony concerning the liquor license was not credible. Credibility of witnesses is left to the sound discretion of the trial court, *Conley*, 133 Idaho at 269, 985 P.2d at 1131; *see also Beard v. George*, 135 Idaho 685, 687, 23 P.3d 147, 149 (2001) ("It is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses."). There is nothing in the record to suggest that the district court acted outside its discretion.

This Court affirms the district court's finding that the Appellants waived their right to declare default on the grounds that the liquor license was transferred by Hanson because the finding is supported by substantial, competent evidence.

## IX.

■ The Appellants argue that the district court erred in finding that Hanson was entitled to damages as the prevailing party.

The district court found that Hanson was entitled to damages for the period of time that he was deprived of possession of the Turf Club. Hanson was entitled to deduct the fair rental value of the Turf Club ($1,500 per month) from January 1996 until April 14,

1998, the date that Hanson's successors reopened the club, from the amount he owed under the contract of sale.

Hanson should have remained in control of the Turf Club property until a forfeiture was properly declared following default, rather than the Appellants taking possession following the issuance of the redemption deed.

This Court holds that the district court did not err in finding Hanson was entitled to damages as an offset for lack of possession.

## X.

■ The Appellants argue that the district court erred in awarding attorney fees and costs to Hanson and his assignees. The Appellants contend that because title should have been quieted in their names by the district court, they should be deemed to be the prevailing party and attorney fees should have been awarded to them by the district court, and not to Hanson.

■ The award of attorney fees rests in the sound discretion of the trial court and the burden is on the person disputing the award to show an abuse of discretion. *Nampa & Meridian Irr. Dist. v. Washington Federal Sav.*, 135 Idaho 518, 524–25, 20 P.3d 702, 708–09 (2001). To prove an abuse of discretion, this Court applies the three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

■ Here, the Appellants are simply stating that their position at trial was the correct one. They do not make any rational arguments demonstrating how the district court abused its discretion by awarding attorney fees to Hanson. "Where issues of discretion are involved, an award of attorney fees is proper if the appellant fails to make a cogent challenge to the judge's exercise of

discretion." *Andrews v. Idaho Forest Indus., Inc.*, 117 Idaho 195, 197, 786 P.2d 586, 589 (Ct.App.1990) (citing *McPherson v. McPherson*, 112 Idaho 402, 732 P.2d 371 (Ct.App.1987)).

This Court concludes that no abuse of discretion has been shown. The district court's grant of attorney fees to Hanson is affirmed.

## XI.

The Appellants contend that they are entitled to recover attorney fees and costs on appeal. However, the Appellants are not the prevailing party. Their request is denied.

■ Hanson and his assignee, McCormick, assert that they are entitled to attorney fees on appeal pursuant to a provision of the contract of sale, and also under I.C. § 12–121 and I.A.R. 41 because the appeal brought by the Appellants is frivolous and no rational basis has been presented for overturning the district court's decisions.

The contract of sale in this case provides:

In the event either party institutes legal action for the enforcement of their rights hereunder, the losing party agrees to pay, in addition to the costs of such ation [sic], the prevailing party's attorney's fees in an amount to be determined by the Court to be reasonable.

This Court awards attorney fees on appeal to Hanson and his assignee, McCormick, as the prevailing party, pursuant to this provision in the contract.

■ The Respondent Hardy has also requested an award of fees under I.C. § 12–121. That request will be granted. "An award of attorney fees is appropriate if the law is well-settled and the appellants have made no substantial showing that the district court misapplied the law." *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 377, 973 P.2d 142, 148 (1999) (citations omitted).

## CONCLUSION

This Court affirms the decisions of the district court. Attorney fees and costs are awarded to Respondents on appeal.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.