IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 44584

| | | |
|---|---|---|
| VALIANT IDAHO, LLC, an Idaho limited liability company, | ) ) ) | |
| Third Party Plaintiff-Cross Claimant-Respondent, | ) ) ) | Boise, June 2018 Term |
| v. | ) ) | Filed: October 15, 2018 |
| JV L.L.C., an Idaho limited liability company, | ) ) ) ) | Karel A. Lehrman, Clerk |
| Defendant-Third Party Defendant-Cross Defendant-Appellant. | ) ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is _affirmed_ in part and _vacated_ in part.

Finney, Finney & Finney, P.A., Sandpoint, attorneys for Appellant. John A. Finney argued.

McConnell Wagner Sykes & Stacey, Boise, attorneys for Respondent. Richard L. Stacey argued.

_____

BEVAN, Justice.

JV L.L.C. ("JV") appeals, asserting that the district court erred in finding that Valiant Idaho, LLC ("Valiant") held a priority position in mortgages on real property located in Sandpoint, Idaho. JV also appeals the district court's award of costs against it, as well as a judgment by the district court that awarded sanctions against JV and its attorney. We affirm in part and vacate in part.

## I. FACTS AND PROCEDURE

This is a foreclosure and lien priority case arising out of a failed golf course and residential housing development project in Sandpoint, Idaho (commonly known as the Idaho Club). The developer of the real property, Pend Oreille Bonner Development, LLC ("POBD"), took out several loans on the real property, agreed to promissory notes, and mortgaged the Idaho Club real property with several lenders, including JV and, as relevant to this appeal, three other

1

lenders: RE Loans ("REL"), LLC, Pensco Trust Co., and Mortgage Fund '08 LLC ("MF08") (collectively, the three "lenders"). JV's interest in the Idaho Club arose out of a mortgage (the "JV Mortgage") it recorded against five parcels (the "five parcels") on the Idaho Club property that JV sold to POBD. POBD ultimately defaulted on its obligations on the promissory notes associated with the mortgages. In addition to defaulting on the notes, POBD failed to pay property taxes to Bonner County (the "County") for several years and failed to pay various mechanics and materialmen, one of which was Genesis Golf Builders, Inc. ("Genesis").

Genesis sued POBD and others, including the three lenders, on October 13, 2009. It alleged breach of contract and sought to foreclose on its mechanic's lien against POBD's property interest in the Idaho Club. Cross-claims and counterclaims were alleged by several defendants. After two years of motion practice and an almost two-year bankruptcy stay, litigation resumed and Genesis' claims were dismissed with prejudice. The three lenders successfully defended the priority of their respective mortgages against all of these claims and cross-claims. The district court called this part of the litigation the "Genesis Suit."

While the Genesis Suit was pending, in June-July 2014, REL, Pensco, and MF08 sold and/or assigned their interests in the Idaho Club to Valiant. The sale included promissory notes, loan documents, and the mortgages (collectively, the "Valiant Mortgages."). When Valiant purchased the REL mortgage and the Pensco mortgage, property taxes for tax years 2008-2014 were unpaid and outstanding against the Idaho Club real property. The County had already levied upon the real property and issued tax deeds in its favor. On July 2, 2014, prior to a tax sale by Bonner County, JV redeemed a portion of the Idaho Club golf course by payment of $140,999.86. In exchange for this payment, JV received a Redemption Deed from the County that was recorded in the Bonner County Recorder's Office on July 7, 2014. On that same date, Valiant redeemed the remainder of the real property subject to the County's tax deeds for a payment of $1,665,855.14. In exchange for this payment Valiant received a Redemption Deed from the County that was recorded on July 8, 2014.

Valiant entered the litigation by substituting itself as the real party in interest for the three lenders and it filed a Counterclaim, Cross-Claim, and Third-Party Complaint for Judicial Foreclosure against POBD, as well as to foreclose any interest that JV and others held in the Idaho Club. The district court called this part of the litigation the "Valiant Foreclosure."

2

Extensive motion practice then ensued, which included a motion for summary judgment against JV, VP, Inc. ("VP") and North Idaho Resorts, LLC ("NIR").

Valiant's motion sought to establish that any rights retained by JV in the Idaho Club Property pursuant to the JV Mortgage were junior in right, title, and interest to Valiant's interest in the Idaho Club Property. Valiant based its argument on the fact that JV recorded subordination agreements that expressly subordinated its mortgage to Valiant's mortgages. The district court agreed, granting Valiant's motion for summary judgment, ruling that "it is undisputed that any rights retained by JV in the Idaho Club Property pursuant to the JV Mortgage are junior in right, title, and interest to Valiant's interest in the Idaho Club Property."

JV filed multiple motions for reconsideration, claiming several things. In one motion it claimed that it was subrogated to the first lien position the county had held for unpaid taxes under Idaho Code section 45-114. Another motion to reconsider raised several more issues. The district court granted that motion on two discrete questions that are not relevant to this appeal, namely whether the 2007 REL loan and Pensco notes had been satisfied and whether the legal description of the real property was legally sufficient. Even so, the court reaffirmed its prior decision relative to section 45-114 and confirmed the priority of Valiant's mortgages.

On July 20, 2016, after a four-day court trial, Valiant was awarded a judgment against POBD[1] in the amount of $21,485,212.26. The judgment also declared that Valiant's mortgages were prior in right, title, and interest to JV's mortgage and Redemption Deed. On the same day, the district court also entered a Decree of Foreclosure ordering the sale of one hundred fifty-six parcels of real property secured by Valiant's mortgages to satisfy the judgment. On August 22, 2016, the court awarded Valiant attorney fees against POBD in the amount of $731,275.48 and costs in the amount of $4,961.98. Also, "because POBD did not defend against the Valiant Foreclosure or participate adversely to Valiant at trial," the court assessed the remaining "costs as a matter of right and discretionary costs incurred by Valiant in the Valiant Foreclosure against JV, VP, and NIR in the total sum of $41,479.69. JV's portion of the costs totaled $15,554.88.

The Bonner County Sheriff noticed the sale of the Foreclosed Property to occur on November 7, 2016. On October 17, 2016, the Sheriff sent letters notifying all interested parties of the sale and posted/published the notice of sale. On November 2, 2016, just days before the sheriff's sale, JV filed a Motion and Application for Stay upon Posting a Cash Deposit and a

---

[1] POBD did not participate in the court trial.

Third Party Claim seeking to postpone the sale. Valiant responded the next day by filing a motion contesting the stay with supporting documents. Valiant also moved for sanctions against JV and its counsel. The district court held an expedited hearing on November 4, 2016 and dismissed JV's motion and third party claim with respect to the foreclosed property. On November 14, 2016, the district court entered its memorandum decision and order granting Valiant's motion for sanctions, ruling that JV's attempt to postpone the sheriff's sale at the last minute was "(1) . . . presented for [ ] improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation; [and] (2) the claims, defenses, and other legal contentions [therein] were not warranted by existing law . . . ." On December 6, 2016, the district court awarded Valiant a judgment for sanctions in the amount of $5,724.00.

JV posted no supersedeas bond or other security to prevent Valiant from executing upon the Judgment. As such, the sheriff's sale of the foreclosed property took place as scheduled on November 7, 2016. One parcel was purchased by a third party for $70,000.00, which was paid to Valiant to reduce the judgment amounts. The remaining one hundred fifty-five parcels were purchased by Valiant after it credit bid a portion of the judgment amount. The parcels purchased by Valiant included the five parcels described on the JV redemption deed. Valiant did not credit bid the entire Judgment amount at the sale; it is still owed $165,000.00, plus interest, pursuant to the Judgment.

## II. ISSUES ON APPEAL

A.  Did the district court err by not subrogating JV to Bonner County's right, title, claim, and interest to the five parcels based upon the tax deed and JV's Redemption Deed?

B.  Did the district court err in awarding Valiant sanctions against JV and JV's attorney?

C.  Did the district court err in awarding costs to Valiant?

D.  Is Valiant entitled to attorney fees on appeal under Idaho Code section 12-121?

## III. STANDARD OF REVIEW

This Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. When ruling on a motion for summary judgment, disputed facts are construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party.

4

*Curlee v. Kootenai Cty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008) (internal citations omitted). Although circumstantial evidence can create a genuine issue for trial, a mere scintilla of evidence is insufficient to establish the existence of a genuine issue of material fact. *Callies v. O'Neal*, 147 Idaho 841, 846, 216 P.3d 130, 165 (2009). This Court has stated:

> [T]he moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.

*Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 581, 329 P.3d 356, 363 (2014) (quoting *Thomas v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002)).

> The non-moving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial. The Court considers only that material contained in affidavits and depositions which is based on personal knowledge and which would be admissible at trial. Summary judgment is appropriate where a non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case when it bears the burden of proof.

*Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 87–88, 996 P.2d 303, 306–07 (2000) (internal quotations and citations omitted). That said, on issues that will not be tried before a jury, a court ruling on summary judgment motions may draw probable inferences arising from undisputed facts. *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009). Only conflicting facts must be viewed in favor of the non-moving party. *Id.* Summary judgment is proper unless a "reasonable person[ ] could reach differing conclusions or draw conflicting inferences from the evidence presented." *Id.* This Court reviews questions of law *de novo*. *Farm Bureau Mutual Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 458, 414 P.3d 1194, 1197 (2018) (citing *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)).

## IV. ANALYSIS

**A. The district court did not err when it found JV's redemption deed did not subordinate it to Bonner County's right, title, claim, and interest based on the tax deed.**

JV asserts that it possesses fee title ownership to the property described in the JV redemption deed because it is subrogated to the same rights and interests possessed by Bonner County through its tax deed. JV argues it is first in priority to the five parcels of the Idaho Club property under two different theories. First, JV contends its redemption deed conveyed fee title under Idaho Code sections 63-1006 and 63-1009 (title theory) and is therefore senior to Valiant's

5

mortgage. Second, JV argues its redemption deed created a special lien securing the $140,999.86 JV paid to redeem under sections 45-105 and 45-114, together with one percent interest per month under section 63-1001 (lien theory).

    1.  <u>JV's redemption of the tax deed conveyed no fee title ownership.</u>

JV argues[2] that its redemption of the tax deed issued by Bonner County conveyed to JV absolute title to the five parcels and that JV's ownership interest was subrogated to Bonner County's interest. According to JV, Bonner County's tax lien vested superior rights in the five parcels, which passed to JV when it redeemed the property and received its redemption deed under Idaho Code sections 63-1006 and 63-1009. JV's theory is misplaced. Rather than supporting JV's hypothesis, these statutes establish that a tax deed does not convey fee title ownership at all. Thus, as a matter of law, the district court correctly granted summary judgment against JV.

"Idaho law makes it clear that [a] redemption deed is not a tax deed given by the county upon a sale to a purchaser; it is a deed issued to a redemptioner in consideration of the payment of delinquent taxes." *Hardy v. McGill*, 137 Idaho 280, 286, 47 P.3d 1250, 1256 (2002) (citing *Trusty v. Ray*, 73 Idaho 232, 236, 249 P.2d 814, 818 (1952)). "A redemption deed simply cancels and terminates all rights of the county in and to the land acquired by virtue of the treasurer's tax deed." *Id.*; *see also* I.C. §§ 63-1007, 63-1010.

The relevant Idaho statutes governing tax delinquency and redemption are set forth in Idaho Code sections 63-1001 through 63-1010. The purpose behind these statutes is to aid the county in collecting taxes, not to acquire private property. *Hardy*, 137 Idaho at 286, 47 P.3d at 1256. A brief overview of the statutes and this Court's precedent supports the district court's conclusion that the tax deed conveyed no additional or superseding ownership rights in JV.

Idaho Code Title 63, Chapter 10 controls the collection of delinquent taxes on real property in Idaho. As such, Chapter 10 also provides the basis for issuing tax deeds and the statutory right to redeem properties which the county holds pursuant to a tax deed. Under section 63-1003, any delinquency on real property taxes results in a perpetual lien in favor of the county

---

[2] Valiant argues that JV did not raise either its title theory or lien theory before the district court. "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015) (quoting *Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001)). A review of the record on appeal confirms JV's assertion that these claims were raised below, and this issue will be considered by this Court.

and entitles the county to a tax deed for the property. A lien exists against the property until the county issues a tax deed to itself for the property. Once a tax deed is issued, the owner or party in interest may redeem the property at any time before the county sells the property to a third party. I.C. § 63-1007. That redemption terminates all right, title, and interest that had been acquired by the county. Furthermore, under section 63-1009 as it existed at the time of the tax deed, once a tax deed is issued, the county no longer holds a lien; the county holds absolute title of the property, free of all encumbrances:

> The [tax] deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 63-1005, Idaho Code, any lien for property taxes which may have attached subsequent to the assessment and any lien for special assessments.

I.C. § 63-1009 (2014). However, under section 63-1010, a redemption deed *does not* convey any additional right, title, interest, or lien to the redemptioner. Instead, it simply extinguishes the rights that the county held to the property under its tax deed:

> In all cases where real property has been or may hereafter be sold for delinquency and a deed has been issued to the county therefor, and redemption has been made in the manner provided and in accordance with the provisions of section 63-1007, Idaho Code, the county tax collector, must issue a deed to the redemptioner; and *upon the giving of such deed*, such tax deed so issued to the county and the delinquency and tax sale upon which the same is based and all delinquencies and sales for prior year delinquencies shall become null and void, and *all right, title and interest acquired by the county, under and by virtue of such tax deed, or tax sales, or delinquencies, shall cease and terminate*.

I.C. § 63-1010 (emphasis added).

The plain language of these statutes provides the county with absolute title; however, upon redemption, all rights of the county in and to the land "cease and terminate." *Id.*; *see also Hardy*, 137 Idaho at 286, 47 P.3d at 1256. Here, the redemption deed was issued to JV in consideration of its payment of delinquent taxes and fees. The amount JV paid became part of the indebtedness secured by JV's mortgage; however, the redemption deed did not, as JV argues, provide JV any additional rights in the five parcels other than what JV already had. Bonner County's absolute ownership of the five parcels through a tax deed was terminated and not conveyed, and the five parcels were returned to the status quo among all Idaho Club lien holders

7

that existed before the tax delinquency. Thus, JV's mortgage and the amount JV paid to redeem remain subordinate to Valiant's mortgages.

Apart from the plain language of the statutes which precludes JV's argument, this Court has already decided this issue in two cases: *Hardy v. McGill* and *Trusty v. Ray*. In *Hardy*, we addressed the following question: "Did the deed from the tax assessor's office convey the County's ownership interest to the Appellants and forfeit any ownership of [Respondents]?" 137 Idaho at 284, 47 P.3d at 1254. We began our discussion in *Hardy* by stating "[t]he Appellants argue that the redemption deed issued by the County conveyed title to the [relevant] property and that [Respondents'] ownership interest was forfeited upon the conveyance" *Id.* at 285, 47 P.3d at 1255. This argument is nearly identical to that offered by JV, no matter how many lienors are involved in this case. This Court then specifically rejected the idea that a redemption deed conveys any ownership interest to the redemptioner:

> Idaho law makes it clear that the redemption deed is not a tax deed given by the county upon a sale to a purchaser; it is a deed issued to a redemptioner in consideration of the payment of delinquent taxes. *A redemption deed simply cancels and terminates all rights of the county in and to the land acquired by virtue of the treasurer's tax deed*.

*Id.* at 286, 47 P.3d at 1256 (emphasis added) (internal citation omitted). The redemptioner is then allowed to include the amount it paid to redeem the past-due taxes in the debt it was owed:

> The delinquent taxes paid by the Appellants became a part of the indebtedness protected by the Appellants' and [debtors'] contract of sale. *Id.* (citing *Eaton v. McCarty*, 34 Idaho 747, 202 P. 603 (1921); *Gillette v. Oberholtzer*, 45 Idaho 571, 264 P. 229 (1928); *Union Cent. Life Ins. Co. v. Nielson*, 62 Idaho 483, 114 P.2d 252 (1941)).

*Id.*

Thus, JV's redemption deed did not grant JV any additional right, title, lien, or other interest in the five parcels. Instead, the amount JV paid to redeem was incorporated into the indebtedness secured by JV's mortgage. Although the contract of sale at issue in *Hardy v. McGill* was not secured by a mortgage, the delinquent tax payment still became part of the indebtedness owed pursuant the parties' contract. *Id.*

This logic is equally applicable here. We have so held in *Trusty*, 73 Idaho at 237–38, 249 P.2d at 817. There, we considered the effect of a redemption deed under similar redemption

8

statutes then in effect. After reviewing the statutes, we reached a holding that is nearly identical to our later holding in *Hardy*:

> The redemption deed was not a tax deed given by the county upon a sale to a purchaser. It was a purported deed issued to an alleged redemptioner in consideration of the payment of delinquent taxes. . . . If properly executed in favor of a qualified redemptioner, such a redemption deed . . . would merely cancel and terminate all rights of the county in and to the land acquired by virtue of the treasurer's tax deed.
>
> The mortgage provides for reimbursement to mortgagee for the payment of any taxes. The delinquent taxes paid by respondent became part of the indebtedness secured by the lien of respondent's mortgage.

*Id.* at 238, 249 P.2d at 818.

Based on the foregoing case law and statutory authority, we hold that JV's "title theory" argument fails. JV's redemption deed conveyed *no* fee title ownership. Although a *tax deed* conveys all right, title, and interest to the property described therein to the county issuing that deed, *a redemption deed is not a clone of the tax deed* and it transfers no interest in the property to a redemptioner. I.C. § 63-1009.

### 2. JV's reliance on Idaho's general lien statutes is misplaced.

JV argues alternatively that it is not limited to Title 63 to acquire subrogated status to the county's lien rights. JV contends, pursuant to Idaho Code section 45-114, that it is entitled to a super-priority lien that is superior to the Valiant Mortgages because JV's redemption deed subrogated it to the County's rights under Idaho's general lien statutes. In other words, Bonner County had a lien that was superior to JV's mortgage when JV redeemed, and JV's redemption allowed it "[t]o be subrogated to all the benefits of the superior lien, when necessary for the protection of [its] interests upon satisfying the claim secured thereby." I.C. § 45-114.

Section 45-114 states:

One who has a lien inferior to another, upon the same property, has a right:

1. To redeem the property in the same manner as its owner might, from the superior lien; and,
2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests upon satisfying the claim secured thereby.

The interpretation of a statute is a question of law over which this Court exercises free review. *City of Pocatello v. Idaho*, 152 Idaho 830, 838, 275 P.3d 845, 853 (2012). Indeed, "this

9

Court has the ultimate responsibility to construe legislative language." *Mulder v. Liberty Nw. Ins. Co.*, 135 Idaho 52, 57, 14 P.3d 372, 377 (2000) (citing *J.R. Simplot Co., Inc. v. Idaho State Tax Com'n*, 120 Idaho 849, 820 P.2d 1206 (1991); *George W. Watkins Family v. Messenger*, 118 Idaho 537, 797 P.2d 1385 (1990)).

> A basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general. Thus, the more general statute should not be interpreted as encompassing an area already covered by one which is more specific.

*Id.* (internal citations omitted).

As an initial point, we hold that Idaho Code Title 63, Chapter 10, as the more specific statute, governs the effect of redemptions from tax deeds, rather than the more general provisions set forth in Idaho Code Title 45. Title 45, Chapter 1 deals with competing lien holders in a more general sense, and so its provisions are not applicable here.

Beyond that, Idaho Code section 45-114 applies to situations in which a junior lien claimant pays off a *superior lien* for the protection of its junior lien. I.C. § 45-105. However, Bonner County did not possess a general lien against JV's five parcels when JV redeemed. It held "absolute title to the land" as described in its tax deed. I.C. § 63-1009. Moreover, JV's redemption deed extinguished the county's interest and returned the five parcels to JV. JV's mortgage then held the same priority position that it had held before the tax delinquency. Thus, even if we were to apply the plain language of section 45-114, it does not apply to tax redemptions because a tax deed is a conveyance and not a lien. I.C. § 63-1009.

We recognize that section 63-1003 states that a tax delinquency creates a "perpetual lien in favor of the county for all property taxes . . . [;]" however, that "lien" is converted to a property right when the county assessor issues a tax deed to the property. I.C. § 63-1006(1). Once again, a tax deed "conveys to the grantee the absolute title to the land described therein, free and clear of all encumbrances . . ." and subject only to the right of redemption set forth in section 63-1007. I.C. § 63-1009. Thus, a tax "lien" ceases to exist upon issuance of a tax deed. The county owns the property; it no longer possesses a lien.

Applying the redemption procedure to the facts of this case, Bonner County initially had a tax lien for the delinquent taxes that POBD did not pay. I.C. § 63-1003. However, on May 21, 2014, the tax lien ceased to exist when Bonner County issued itself a tax deed for the five

parcels. I.C. § 63-1009.[3] Upon issuance of the tax deed, Bonner County acquired absolute title to the five parcels subject only to the rights of redemption set forth in section 63-1007. *Id.* When JV redeemed, the five parcels returned to the status which they held before the tax delinquency. Thus, Valiant's mortgages and JV's mortgage retained their same priority positions as determined by the district court: Valiant was senior and JV was junior. I.C. § 63-1010. JV's paying the past-due taxes did not have the effect of moving it to the front of the line, vis-à-vis Valiant's position. The district court therefore did not err when it granted Valiant's motion for summary judgment and JV's "lien theory" fails.

**B. Sanctions were properly awarded against JV and JV's attorney.**

JV asserts that the district court's imposition of sanctions was erroneous because JV and its attorney were not given the opportunity to withdraw or appropriately correct the challenged filing within twenty-one days. The record belies JV's assertion in this regard.

1. The district court did not err when it awarded sanctions to Valiant against JV and JV's attorney.

The district court's imposition of sanctions against JV and its attorney was not an abuse of its discretion. "The standard of review for an appellate court reviewing a trial court's imposition of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion." *Campbell v. Kildew*, 141 Idaho 640, 649–50, 115 P.3d 731, 740–41 (2005) (citing *Slack v. Anderson*, 140 Idaho 38, 39, 89 P.3d 878, 879 (2004). In reviewing whether the district court abused its discretion, this Court applies the four-part test set forth in *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Furthermore, "[t]his Court exercises free review over the district court's conclusions of law." *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 363, 93 P.3d 685, 694 (2003) (citing *Trimble v. Engelking*, 134 Idaho 195, 196, 998 P.2d 502, 503 (2000)).

The relevant portion of Rule 11 of the Idaho Rules of Civil Procedure declares as follows:

> By presenting to the court a pleading, written motion, or other paper, whether by signing, filing, or submitting, or later advocating it, an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[3] The tax deed was issued on May 21, 2014. JV did not redeem until July 2, 2014, and subsequently recorded its redemption deed with the Bonner County Recorder's Office on July 7, 2014.

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

I.R.C.P. 11(b). Thus, the Rule provides two separate grounds for imposing sanctions: (1) frivolous filings; and (2) misusing judicial resources for an improper purpose. *Id.*

In this case, the district court articulated that JV's motion for stay was frivolous. It had been presented for an improper purpose because the claim set forth the same legal arguments previously rejected by the court, and JV sought to intentionally mislead the Sheriff into postponing the sale in direct violation of the court's order. As a result, Valiant had a right to recover against JV and its counsel, jointly and severally, as provided in the Rule. I.R.C.P. 11(c)(1).

In its memorandum decision and order, the district court relied on the following facts in awarding sanctions. On October 5, 2016, Valiant obtained a Writ of Execution from the Bonner County Sheriff requiring the Sheriff to sell certain property to satisfy the judgment. The sale was scheduled for November 7, 2016, and notice was sent to all parties. On November 2, 2016, JV sought to delay the sale by filing a Motion and Application to Stay. That same day, JV hand delivered its motion to the Bonner County Sheriff. However, JV notified Valiant by placing the documents in the U.S. Mail. The Bonner County Sheriff contacted Valiant on November 3, 2016, and Valiant requested an expedited hearing to keep the sale on schedule. Valiant also moved for sanctions.

The district court determined that time was of the essence because the sale was scheduled for November 7, 2016. The district court was aware that Valiant had spent $11,684.31 to notice the sheriff's sale and, if the sale were delayed, Valiant would need to start from the beginning and spend at least another $1,684.31. As a result, an expedited hearing was held on November 4, 2016, and the district court denied JV's motion to stay. At the hearing, the district court stated: "I recognize what Valiant is saying—it takes weeks and weeks and tons of money to get these

12

sheriffs sales scheduled." The district court therefore determined that JV was attempting an end-run around the court by immediately notifying the Sheriff of the stay while keeping Valiant ignorant of the motion as long as possible.

On November 14, 2016, the district court issued a memorandum decision and order on Valiant's motion for sanctions, finding that sanctions were proper because JV's motion was presented for an improper purpose and was frivolous. The district court held that (1) the motion for stay was untimely; (2) the motion for stay raised the same legal arguments that had "been repeatedly rejected"; and (3) JV's conduct was "an attempt to intentionally mislead the Sheriff into postponing the sale in direct violation" of the district court orders. On December 6, 2016, the district court issued a corresponding judgment.

Based on these facts, JV has failed to establish that the district court's imposition of sanctions was an abuse of discretion. The party claiming that an abuse of discretion occurred bears the burden of demonstrating that the district court violated at least one part of the abuse of discretion test. *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 474, 36 P.3d 218,226 (2001). JV makes a conclusory claim that it could have avoided sanctions by withdrawing or correcting its motion within twenty-one days of service—the so-called safe-harbor rule—but it does not support this claim by argument or authority. At no point in its briefing did JV seek to show that the district court violated any part of the abuse-of-discretion test. A failure to show that an abuse of discretion occurred under any part of the test applied by this Court is fatal to JV's argument. *Green River Ranches, LLC, v. Silva Land Co., LLC*, 162 Idaho 385, 392, 397 P.3d 1144, 1151 (2017).

JV's conclusory argument against sanctions conflicts with the plain language of Idaho Rule of Civil Procedure 11(c)(2). That Rule, in pertinent part, provides: "The motion [for sanctions] . . . must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." JV argues that Valiant failed to comply with this rule because "[a]t no time was JV and/or its attorney given the opportunity to withdraw or appropriately correct the challenged filing within 21 days." JV misinterprets the rule and misstates the record.

On its face, Rule 11(c)(2) does not wholly bar a court from resolving a motion for sanctions within twenty-one days after the challenged claim is served. Rather, Rule 11(c)(2) bars

13

an award of sanctions within twenty-one days after the service of the challenged claim only if the challenged claim has already been withdrawn or appropriately corrected during that time. Consequently, a motion for sanctions may be filed at any time (even within twenty-one days after service of the challenged claim) if the challenged claim has yet to be withdrawn or corrected.

Here, JV moved for stay on November 2, 2016, and Valiant moved for sanctions the next day. Valiant did not have to wait twenty-one days before filing its motion for sanctions as JV contends, particularly given the time-sensitive nature of the issues before the district court. JV asserts that it had no opportunity to withdraw or correct its motion, but this is not true. JV could have withdrawn its motion when it received notice of Valiant's motion for sanctions on November 3, 2016. JV could have withdrawn its motion at the hearing on November 4, 2016; instead, JV argued its motion, setting forth the same arguments which had been fully briefed, argued, adjudicated, and ultimately rejected by the district court at summary judgment and at trial. Thus, though given the opportunity, JV's counsel never took the opportunity to withdraw JV's motion.

Finally, Valiant argues this Court should affirm the district court's award of sanctions because Rule 11(c)(2) provides that the twenty-one day window may be altered if "another time" is set by the court. Valiant reads the rule correctly; there is no indication that "another time" must be, at a minimum, twenty-one days in the future. It stands to reason that a court may shorten the twenty-one day window when time is of the essence. Here, the district court set "another time" by holding an expedited hearing on JV's motion. Thus, JV's attempt to shield itself behind the twenty-one day safe harbor provision fails on this ground as well.

JV had the opportunity to withdraw or correct its motion before or during the hearing. Requiring the court and Valiant to wait twenty-one days after the court held an expedited hearing to allow JV to withdraw or correct its motion, brought in bad faith, would result in a waste of judicial resources, which is a harm that sanctions are designed to remedy. *Stolle v. Bennett*, 144 Idaho 44, 51, 165 P.3d 545, 552 (2007) (holding that sanctions were appropriate because the appeal "wasted judicial resources"). Therefore, we hold the district court did not abuse its discretion when it awarded Valiant sanctions against JV and JV's attorney.

**C.  The district court's award of costs constituted an abuse of discretion.**

Idaho Rule of Civil Procedure 54(d)(1)(A) and (C) grant the prevailing party in a civil matter certain costs "as a matter of right." Additionally, "[a] trial court may, in its discretion, award a prevailing party certain costs where there has been a showing that the costs are necessary and exceptional, reasonably incurred, and should in the interests of justice be assessed against the adverse party." *Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 307, 314, 109 P.3d 161, 168 (2005); I.R.C.P. 54(d)(1)(D). "Any party opposing an award of discretionary costs bears the burden of demonstrating an abuse of this discretion by the trial court." *Id.* (citing *Great Plains*,136 Idaho at474, 36 P.3d at 226; I.R.C.P. 54(d)(1)(C), (D). In reviewing whether the district court abused its discretion, this Court applies the following four-part test:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

JV argues that the district court's award of costs was erroneous because: (1) the costs "associated with the testimony of Barney Ng" should be allocated to the foreclosure of the debt against POBD and the real property security because Mr. Ng was an agent and/or beneficiary of REL, Pensco, and MF08; (2) it was inequitable to allocate 37.5% of the costs associated with the litigation guarantee to JV because there were numerous defendants; (3) travel expenses should not be awarded against JV because they were not exceptional; and (4) if this Court reverses the district court's judgment, the prevailing party analysis will change, which would affect the award of costs below. Since we do not reverse the trial court's judgment on the merits, we will address JV's other arguments.

We note that we have addressed the cost issues presented here in a case involving JV's co-defendant, North Idaho Resorts, LLC, in *Valiant Idaho, LLC v. North Idaho Resorts, LLC*, No. 44583, 2018 WL 4927560, at *1 (Idaho Oct. 11, 2018) ("*North Idaho Resorts*"). That case contains a detailed analysis of the cost-related issues presented here that we will not restate in this opinion. We rely upon *North Idaho Resorts* for support of our conclusions reached herein.

1.      The district court abused its discretion in the way that it applied the formula to its costs award.

15

The district court awarded costs in the Valiant Foreclosure against the three defendants on a percentage basis:

1. NIR is responsible for 0.25 of $41,479.69=$10,369.93
2. JV is responsible for 0.375 of $41,479.69=$15,554.88
3. VP is responsible for 0.375 of $41,479.69=$15,554.88

The only explanation noted by the court for this conclusion is that the court "is authorized by Idaho Rule of Civil Procedure 54 to apportion costs between the defendants." The authority that the court relied on only allows for the apportionment when "a party to an action prevailed in part and did not prevail in part. . . ." I.R.C.P. 54(d)(1)(B). Thus, by apportioning costs according to its formula, *without providing any additional reasoning*, the court failed to properly apply the applicable legal standard while exercising its discretion. This is not to say that trial courts cannot assess costs to non-prevailing co-defendants in a proportionate way, based on their respective responsibilities for those costs; however, when a court does so, it must provide the basis for its reasoning, particularly stating *why* the costs should be apportioned among the adverse parties in the manner designated by the court.

The court's order here failed to state those reasons, other than intimating that because JV and VP participated equally in litigating the issues before the court, including defending the case in a court trial, JV and VP shared nearly 75% of the cost responsibility for the litigation. We vacate the court's judgment in this regard, remanding for an opportunity for the district court to explain why JV and VP bear the responsibility for 75% of the costs awarded here, particularly when POBD, the party which had judgment entered against it for over $21 million, was ordered to pay a much smaller amount of such costs. We recognize that POBD did not litigate the case at trial, and that costs as a matter of right that are associated with the trial are appropriately the responsibility of the parties who participated in the trial. *See North Idaho Resorts,* 2018 WL 4927560, at *4. However, the rationale supporting such a conclusion needs to be spelled-out and identified as part of the trial court's applying reason to the process. *Id*. It may be that JV will be ordered to pay more in total costs than were awarded previously. That will depend on the trial court's ability to review the overall record in light of the standards applicable to its decision.

2.     <u>The district court's cost award is vacated.</u>

Valiant argues that JV has failed to raise cogent arguments regarding the court's decision to award costs, and as such, has waived these issues on appeal. Indeed, when argument,

authority, and legal reasoning are absent, the issue is waived on appeal. *Mueller v. Hill*, 158 Idaho 208, 215–16, 345 P.3d 998, 1005–06 (2015) (citing *Bettwieser v. New York Irr. Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013); *Bolognese v. Forte*, 153 Idaho 857, 867, 292 P.3d 248, 258 (2012)). Nevertheless, we construe JV's brief to raise issues regarding costs by disputing how the court abused its discretion, even if it failed to state explicitly the proper standard for a discretionary review.

As to the discretionary costs, we determine that JV's brief raises its issues with sufficient particularity to have those matters revisited given our holding in *North Idaho Resorts*. Since we have vacated and remanded the award of costs in *North Idaho Resorts*, we likewise vacate and remand for similar reasons regarding the district court's discretionary cost determination here, including those costs relating to the litigation guarantee. *See North Idaho Resorts*, 2018 WL 4927560, at *8–9. Recognizing that the trial court has the absolute right to revisit the total cost award, the court may choose to award even more costs as a matter of right against JV than it did before, since North Idaho Resorts' cost obligation may actually decrease on remand. For that reason, the cost award for Barney Ng and other costs as a matter of right will also need to be revisited by the trial court. As we have held, the litigation guarantee in particular will require a rebalancing of the overall costs in this case. *Id*. The extent that the interests of justice support award of that cost against JV is a matter for the court to determine upon remand.

## D. Valiant is not entitled to attorney fees on appeal under Idaho Code section 12-121.

> An award of attorney fees under Idaho Code section 12-121 is not a matter of right to the prevailing party, but is appropriate only when this Court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation.

*Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 850, 419 P.3d 1139, 1148 (2018) (internal quotations and citation omitted).

> Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law.

*Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012). However,

> "[w]hen deciding whether attorney fees should be awarded under I.C. § 12-121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the

17

losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation."

*Budget Truck Sales*, 163 Idaho at 850, 419 P.3d at 1148 (quoting *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009)).

Valiant argues on appeal that JV merely invites this Court to second-guess the district court's well-reasoned opinion. Valiant's argument is not entirely without merit. However, analyzing each issue individually, it is not clear that JV pursued this appeal without foundation. First, JV argues that it was not limited to Title 63 to acquire subrogated status. Under section 45-114, JV offered a good faith argument that it has a statutory right to be subrogated to a superior position to protect its interest in its mortgage. In that regard, this Court was not asked to simply re-weigh the evidence presented to the district court. JV offered good faith arguments that the statutes were to be construed as complementary and *in pari materia* because section 63-1009 vests title in the redemptioner and section 45-114 gives the benefit of super priority to the redemptioner. Indeed, "[s]tatutes pertaining to the same subject are construed, as far as reasonably possible, to be in harmony with one another." *Regan v. Owen*, No. 43848, 2017 WL 3927024, at *7 (Idaho Sept. 8, 2017) (citing *Christensen v. West*, 92 Idaho 87, 88, 437 P.2d 359, 360 (1968)). However, because the facts of this case involve the issuance of a tax deed, the district court correctly applied the more specific rule of section 63-1009 in this case. Nevertheless, this was not a frivolous issue and attorney fees are therefore not awardable on that basis.

In addition, we have vacated and remanded this case for the district court to revisit its award of costs. In that regard, JV was the prevailing party. Valiant therefore has failed to establish, and the record does not show, that JV brought or pursued this appeal in an unreasonable or frivolous manner. Thus, under the authority of Idaho Code section 12-121, we decline to award fees to Valiant.

## V. CONCLUSION

For the above reasons, we affirm the district court's grant of summary judgment to Valiant. We also affirm the district court's award of sanctions against JV and JV's attorney. The costs awarded by the trial court are vacated and remanded for further consideration consistent with this opinion and the recently-released opinion in *North Idaho Resorts*. No costs will be awarded on appeal since each party prevailed in part. I.A.R. 40(a).

18

Chief Justice BURDICK, Justices HORTON, BRODY, and Justice *pro tem* SCHROEDER, CONCUR.